WHEATON ROLLER–MILL COMPANY v. JOHN T. NOYE MANUFACTUR-
ING COMPANY.[1]

November 6, 1896.

Nos. 10,127—(77).

**Written Contract—Parol Evidence.**

Where, in the absence of fraud, accident, or mistake, the parties have de-
liberately put their contract into writing, which is complete in itself and
couched in such language as imports a complete legal obligation, parol
evidence is inadmissible to introduce into the contract a term which is not
contained in the writing.

**Same—Completeness.**

The only criterion of its completeness or incompleteness is the writing
itself. It cannot be proved to be incomplete by going outside of the writ-
ing, and proving that there was an oral stipulation entered into not con-
tained in the written agreement.

**Same—Construction—Extrinsic Evidence.**

But, while the writing itself is the only criterion, it is not necessary that
its incompleteness should appear on its face from mere inspection. It is
to be construed, as in any other case, in the light of its subject-matter,
and the circumstances in which, and the purposes for which, it was exe-
cuted, which evidence is always admissible in the construction of written
contracts, in order to put the court in the position of the parties.

**Same—Contract of Sale—Oral Warranty.**

The doctrine repudiated that in the case of written contracts for the sale
of personal property, which are silent on the subject of warranty, an oral
warranty may be proved on the ground that it is merely collateral to the
contract of sale. Thompson v. Libby, 34 Minn. 374, followed.

**Same—Implied Warranty.**

The defendant contracted to furnish and set up in plaintiff's mill an engine
and boiler of a specified make, size, and power. *Held,* that there was no
implied warranty that it would furnish power enough to operate the mill.

Appeal by plaintiff from an order of the district court for Traverse
county, C. L. Brown, J., denying a motion for a new trial. Affirmed.

The written contract, referred to in the opinion, was as follows:

"Wheaton, Minn., Aug. 31st, 1889.

"It is hereby mutually agreed by and between The John T. Noye
Mfg. Co., of Buffalo, N. Y., and the undersigned parties, in Wheaton,

[1] Reported in 68 N. W. 854.

Minn., that the said John T. Noye, proposes to furnish said parties one complete forty horse power outfit of the Rice automatic engine and the Bromwell Boiler as hereinafter described, viz.:   One Rice automatic engine 8x16 all complete with oilers site feed lubricator, anchor bolts and piping for same, also one Bromwell boiler 44x14 with stack of No. 12 iron to be 55 feet long, and guys for same, two set and all connections for same, said boiler to have 30–3–1–2 flues with man hole in front and hand hole on bottom at both ends, Dome to be at least 28x30, Shell to be 1–4 inch and 60,000 T. Strength, heads to be at least 7–16, also one of Schofer Buaenling No. 2–1–2 Exhaust Improved Injectors, also one tank to hold at least 15 barrels, and all the necessary connections for same to make a first class job. And it is further agreed, that the said parties shall furnish said John T. Noye Mfg. Co. all common brick necessary to do a first class job for the sum of $9.00 per 1000, also lime at $1.00 per barrel and sand at $2.20 per load, delivered on the ground.   Said John T. Noye Mfg. Co. to set said engine, boiler and all connections in a first-class manner, and to have same in good running order, on or before Nov. 1st, 1889, for the sum of Sixteen Hundred Dollars, to be paid as follows: Cash on shipment of goods One Thousand and Twenty-seven Dollars and fifty cents ($1027.50), Five Hundred and Seventy three Dollars fifty cents ($573.50) to be paid in six months from shipment of machine at 7 per cent. interest until paid.   It is further agreed that the said John T. Noye pay all freight to Minneapolis, Minn., and that the undersigned shall pay all freight from Minneapolis to Wheaton, Minn. And it is hereby agreed that the said John T. Noye Mfg. Co. will do all their power to avoid accident and delay to fulfil said contract, and that said Co. shall hire C. J. Blandin to superintend the setting and erecting said plant, and put it in successful operation; that said John T. Noye shall furnish all labor and help to erect same, also Cuncle pop, one free Exhaust Valve and one Chime Whistle.

"John T. Noye Mfg. Co., By C.
"J. Blandin.
"Alfred Setterlund.
"J. T. Cook.
"O. A. Rustad.
"P. J. Hopkins.
"Richard Harvey.
"T. K. Mork."

Plaintiff's offer of proof, referred to in the opinion in the discussion of the second assignment of error, was as follows:

"We offer to prove by this witness that the plaintiff purchased from the defendant a steam engine, boiler and smokestack complete and that in connection with the written agreement to furnish the same, at the same time, a special warranty was entered into in relation to the quality of the material furnished, its capacity to perform the duties for which it was purchased, and that it was suffi-

cient to fulfill all the conditions described in the written agreement, that is, that there was the outside agreement that was sufficient to fulfill all the conditions of the written agreement, and that it was competent to perform all the duties of machinery ordinarily used for that purpose."

*C. H. Colyer* and *A. S. Crossfield*, for appellant.
*O' Hair & Murphy*, for respondent.

MITCHELL, J.    This action was brought to recover damages for the breach of a warranty of a steam engine, boiler, etc., furnished and set up by defendant for the plaintiff in its mill.    The alleged warranty was that the machinery was well made, of good material, and *capable of operating plaintiff's mill at full capacity;* the part italicized being all that is material on this appeal.    It appeared on the trial that the machinery was furnished under the written contract found in full in the paper book, at folios 52 to 57, which is so long that we shall leave it to speak for itself, without attempting here to state its provisions.    The plaintiff then offered certain parol evidence, the exclusion of which by the court forms the subject of the assignments of error.

We do not find in the part of the record cited any such ruling as that referred to in the first assignment of error, which may therefore be passed without further notice.

The second assignment of error is that "the court erred in sustaining defendant's objection to plaintiff's offer to prove that there was an express oral warranty."    This refers to the complex and somewhat obscure and indefinite offer found at the bottom of page 12 of the record.

Some parts of this offer were clearly inadmissible, and for that reason, if no other, the defendant's objection was properly sustained. For example, the offer, in part, was to prove that there was an oral agreement that the machinery should fulfill the conditions of the written agreement.    That was necessarily one of the terms of the written agreement itself, whether the conditions referred to in the offer were expressed or implied.    But what we infer the assignment of error means is that the court erred in refusing to allow the plaintiff to prove an express oral warranty, as alleged in the complaint, that the machinery would be capable of operating plaintiff's mill at its full capacity.    It will be observed from its language that the offer

was to prove an oral warranty made in connection with, and at the same time as, the written agreement.  Assuming that such a warranty as suggested could be spelled out of the offer, and that it was made in proper form, still the evidence was properly excluded under the familiar rule that parol evidence is inadmissible to vary the terms of a written contract.

Plaintiff's contention is that it does not fall within that rule; that the offer was merely to prove a separate oral agreement as to a matter on which the writing was silent, and which was not inconsistent with its terms.  The rule thus sought to be invoked is one which both courts and text writers have found some difficulty in formulating so as to be at once complete as well as accurate.  Mr. Stephens states the rule thus:  There may be proved by parol "the existence of any separate oral agreement as to any matter on which a document is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them."  Stephen, Ev. c. 12, § 2.  This seems an accurate statement of the rule, except that it is indefinite as to what are "the circumstances of the case" which the court may consider in determining the completeness or incompleteness of the document.  Mr. Freeman, in his note to Green v. Batson,[2] 5 Am. St. Rep. 194, 36 N. W. 849, says:[3]  "Where the contract as expressed in the writing is manifestly incomplete, parol evidence is admissible to show a contemporaneous agreement that the property should be of a particular quality, kind, or quantity."  This statement of the rule is perhaps subject to the criticism that it seems to imply that the incompleteness of the writing must be manifest on its face from a mere inspection of the document.

All the authorities are substantially agreed that where, in the absence of fraud, accident, or mistake, the parties have deliberately put their contract into a writing which is complete in itself, and couched in such language as imports a complete legal obligation, it is conclusively presumed that they have introduced into the written instrument all material terms and circumstances relating thereto. But the point upon which the courts have sometimes differed is as to

[2] 71 Wis. 54.                    [3] At page 197.

how the incompleteness of the written contract may be made to appear. Some cases seem to go to the length of holding that this may be done by going outside of the writing, and proving that there was a stipulation entered into but not contained in it, and hence that only part of the contract was put in writing. If any such doctrine is to obtain, there would be very little left of the rule against varying written contracts by parol. Such is not the law. Other cases seem to go almost to the other extreme, by holding that the incompleteness of the writing must appear on the face of the document from mere inspection. But to furnish a basis for the admission of parol evidence the incompleteness need not be apparent on the face of the instrument.

If the written contract, construed in view of the circumstances in which, and the purpose for which, it was executed,—which evidence is always admissible to put the court in the position of the parties,—shows that it was not meant to contain the whole bargain between the parties, then parol evidence is admissible to prove a term upon which the writing is silent, and which is not inconsistent with what is written; but, if it shows that the writing was meant to contain the whole bargain between the parties, no parol evidence can be admitted to introduce a term which does not appear there. In short, the true rule is that the only criterion of the completeness of the written contract as a full expression of the agreement of the parties is the writing itself; but, in determining whether it is thus complete, it is to be construed, as in any other case, according to its subject-matter, and the circumstances under which and the purposes for which it was executed.

What was said on this subject in Thompson v. Libby, 34 Minn. 374, 26 N. W. 1, is perhaps incomplete, in not specifically adverting to this rule of construction, and for that reason capable of being understood as meaning that the incompleteness must appear on the face of the document from mere inspection. For a full discussion of the law on this subject, see Mr. Freeman's note to Green v. Batson, supra; also Browne, Par. Ev. c. 12. Some few cases hold that in the case of a written contract for the sale of personal property, where the writing contains no warranty, it is competent to admit parol evidence to add a warranty, placing the decision on the ground that a warranty is

collateral to the contract of sale.    This doctrine was expressly repudiated in Thompson v. Libby, supra.

Applying the rules which we have laid down, parol evidence to prove a warranty, which was part of the prior or contemporaneous agreement, and about which the written contract was silent, was clearly inadmissible.    The written contract is of the most formal and complete character, specifying with minute detail the particular make, name, size, and power of the engine and boiler and appurtenances to be furnished, and how and when they were to be set up. The plaintiff having thus contracted for machinery of a particular make, size, and power, the mere fact that it was purchased for the purpose of operating this mill, and that defendant knew this, would not be a circumstance that would of itself justify the court in construing the writing as an incomplete expression of the contract of the parties.    Defendant having furnished the specific machinery, both in make, size, and power, which the parties contracted for, tnere was no implied warranty that it would furnish power enough to operate plaintiff's mill.    Wisconsin R. P. Brick Co. v. Hood, 60 Minn. 401, 62 N. W. 550.    This also disposes of plaintiff's third and fourth assignments of error.

Order affirmed.