SHERMAN H. TAYLOR v. GEORGE R. MORE AND OTHERS.[1]

November 22, 1935.

No. 30,443.

[1]Reported in 263 N. W. 537.

John E. Regan and Moonan & Moonan, for appellant.
Putnam & Carlson and Wilson & Wilson, for respondents.

LORING, JUSTICE.

In a suit to recover the alleged purchase price of 165 shares of the capital stock of the First National Holding Company of Elmore, Minnesota, the plaintiff had a verdict and has appealed from a judgment entered after an order for judgment notwithstanding the verdict.

Taylor, the plaintiff, had been long connected with the First National Bank of Elmore, and, from 1925 until January, 1933, was president of that institution, owning 219 shares of its capital stock. In 1927 the bank had become burdened with a large amount of undesirable assets, and it became necessary for the stockholders either to pay a voluntary assessment or to purchase a large amount of such questionable assets from the bank. They chose to organize

the First National Holding Company, with a total capital stock one-half that of the bank divided into shares of $50 each, so that there was the same number of shares in the capital of the holding company that there was in that of the bank. Each stockholder of the bank was to take the same number of shares in the holding company that he held in the bank, and such holding company stock was transferable only with the bank stock. There was no provision made to prevent the transfer of the bank stock without the transfer of holding company stock. Taylor was therefore under the necessity of taking 219 shares of the capital stock of the holding company at $10,950. He got most of this money by converting $10,500 in trust funds of which he had control under a power of attorney or trust arrangement with one Goltz. Six thousand dollars of such funds had been used by him for other purposes. These moneys had been deposited in the First National Bank, and the circumstances connected with their conversion by Taylor were such that the defendants were advised by counsel that the bank might be held liable therefor. There was also some probability of a personal liability on their part. They received this advice early in 1929 and thereupon commenced negotiations with Taylor to supply him with the money to reimburse the Goltz account. Their first proposal was to lend him $16,500 upon the security of his stock in the bank and holding company. He rejected this proposal. They then proposed to buy 165 shares of his bank stock at an agreed price of $16,500, the money to be used to reimburse the Goltz account. He accepted the offer under circumstances more fully discussed later.

Upon the claim that at the same time that this agreement was made the defendants orally agreed to take 165 shares of the holding company stock at par, the plaintiff brings this suit. The jury found that such a contract was made and gave him a verdict for $8,250 with interest at 6 per cent from March 8, 1929. The defendants denied that they agreed to purchase the holding company stock, and they contend that the complete contract between them and Taylor was integrated in documentary form. Whatever may have occurred in the oral negotiations, Taylor on March 8, 1929,

turned over 165 shares of the bank stock by leaving them with Mr. A. F. Weyer, who was then cashier of the bank and one of the defendants. He left the stock with Weyer to be turned over "whenever the money was ready," and on that day the defendants executed and delivered to plaintiff a document as follows:

"Received of S. H. Taylor One Hundred Sixty-five (165) shares of the capital stock of the First National Bank of Elmore, Minnesota, represented by certificates numbered 1, 3, 5, 59, 60 and 79, said certificates being assigned to L. E. Frederickson, one of the parties whose signature appears below for the use and benefit of all the persons signing this instrument and the undersigned and each of them, jointly and severally, agree within a reasonable time to pay in to the First National Bank of Elmore, Minnesota, the sum of sixteen thousand five hundred and no/100 Dollars for which sum a certificate of deposit payable to August Goltz or order shall be issued, due in one year and bearing interest under the usual terms and conditions of certificates of deposit issued by said First National Bank of Elmore."

The plaintiff did not assign or offer to assign the holding company stock at the time he turned over the bank stock or afterwards, nor does he claim that he demanded payment therefor until some time later, and then only of defendant A. F. Weyer. Within ten days thereafter the defendants paid into the bank $16,500, all of which went to the credit of the Goltz account.

1. As we regard the case, its determination depends upon whether the quoted document, together with the assignments of Taylor's bank stock, so integrate the contract as to render oral evidence of a claimed sale of the holding company's stock along with the bank stock inadmissible. Much is said in the briefs in regard to the improbability of plaintiff's theory of the case, and we must concede that the probabilities are overwhelmingly against the plaintiff on this point.

It is true that the ordinary receipt, which is nothing more than a written admission and not contractual in character, may be varied or supplemented by oral evidence; but here we have a docu-

ment which not only acknowledges receipt of the shares of bank stock but makes an agreement by the defendants to pay $16,500 therefor within a "reasonable time" and provides that the consideration so paid shall be placed in a certificate of deposit payable to August Goltz. It will therefore be seen that the most important feature of the transaction was the disposition of the purchase price to the credit of Goltz. That was the subject matter and principal purpose of the bargain. The so-called receipt was delivered to the plaintiff as a part of the transaction, accepted by him, and its conditions performed by defendants according to its terms. We can see no difference between this transaction as it was documented from what it would have been had the transfer of the shares and the provisions of the so-called receipt been incorporated in one document and signed by the plaintiff and these defendants.

In Gladden v. Keistler, 141 S. C. 524, 140 S. E. 161, the court had before it a document very much like this in character, and it was held to be contractual in its nature. Wigmore in his 1934 Supplement to his work on evidence cites this case with the comment that it, together with the single dissent, offers a very able discussion of the principles applicable to the question before us. Wigmore, Evidence, 1934 Supp. § 2430.

It was not necessary that the plaintiff should sign the so-called receipt in order to have its terms binding upon him. Gladden v. Keistler, 141 S. C. 524, 140 S. E. 161; Parker v. Carter, 91 Ark. 162, 120 S. W. 836, 134 A. S. R. 60; Muscatine W. Co. v. Muscatine Lbr. Co. 85 Iowa, 112, 52 N. W. 108, 39 A. S. R. 284. He had assigned the stock certificates, and he accepted performance of the contract set out in the receipt according to its terms. The receipt stated that the consideration was to be paid within a reasonable time, and he accepted performance as provided therein. It also provided that the consideration when so paid should be devoted to the satisfaction of the Goltz account. This he likewise acquiesced in. Upon its face the document appears to set forth a complete contract.

This court is committed to the rule laid down by Mr. Justice Mitchell in Thompson v. Libby, 34 Minn. 374, 377, 26 N. W. 1:

"But to allow a party to lay the foundation for such parol evidence by oral testimony that only part of the agreement was reduced to writing, and then prove by parol the part omitted, would be to work in a circle, and to permit the very evil which the rule was designed to prevent. The only criterion of the completeness of the written contract as a full expression of the agreement of the parties is the writing itself. If it imports on its face to be a complete expression of the whole agreement,—that is, contains such language as imports a complete legal obligation,—it is to be presumed that the parties have introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing on the particular one to which the parol evidence is directed. The rule forbids to add by parol where the writing is silent, as well as to vary where it speaks."

The writing must be construed in the light of surrounding circumstances and the purpose for which it was executed. Osterberg v. Section 30 Development Co. 160 Minn. 497-499, 200 N. W. 738. In Mitchell v. Lath, 247 N. Y. 377, 380, 160 N. E. 646, 647, 68 A. L. R. 239, the court laid down the rules for applying the surrounding circumstances and purposes of the parties to the interpretation of the contract with a view to determining the extent of the integration, as follows:

"Under our decisions before such an oral agreement as the present is received to vary the written contract at least three conditions must exist, (1) the agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing; or put in another way, an inspection of the written contract, read in the light of surrounding circumstances must not indicate that the writing appears 'to contain the engagements of the parties, and to define the object and measure the extent of such engagement.' Or, again, it must not be so clearly connected with the principal transaction as to be part and parcel of it."

And in Gianni v. R. Russell & Co. Inc. 281 Pa. 320, 323, 126 A. 791, 792:

"When does the oral agreement come within the field embraced by the written one? This can be answered by comparing the two, and determining whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made. If they relate to the same subject-matter and are so interrelated that both would be executed at the same time, and in the same contract, the scope of the subsidiary agreement must be taken to be covered by the writing. This question must be determined by the court."

This may leave a heavy task upon trial courts in the application of the rule, but if we are to accept the more recent interpretation of the rule laid down by Mr. Justice Mitchell, the New York criterion seems to be the logical one. No doubt the same circumstances might result in different conclusions by different courts, but that fault is one likely to occur in the human administration of justice. There seems no choice between a strict exclusion of surrounding circumstances and a rule in substance like that laid down in New York.

Here the plaintiff seeks to ingraft upon the written agreement another contract for the purchase and sale of a distinct block of stock, and, while it is in a sense collateral, it is nevertheless so clearly connected with the principal transaction as to be part and parcel of it and one that the parties would clearly be expected to embody in the writing. Here the principal purpose of the transaction was to raise $16,500 to be put into the Goltz account. The defendants first proposed to supply the money on the security of the plaintiff's stock. When he refused they proposed a purchase and that the consideration therefor should be credited to the Goltz account. If in order to get the plaintiff to consent to such purchase they had to purchase the holding company stock and pay an additional $8,250 for his own account, certainly that arrangement would have been embodied in the document which they executed

and delivered to him and which they performed according to its terms.

If the contract here before us be read in the light of the surrounding circumstances and especially of the purpose of the transaction, we are compelled to the conclusion that the parol evidence of the purchase of the holding company stock would violate the parol evidence rule laid down by our prior decisions. Not only does it seek to add by parol where the writing is silent, but it contradicts the clear implication of fact that the writing fully expresses the whole bargain in regard to the matter in question. Williston, Contracts, § 639, p. 1236. If the alleged purchase of holding company stock had been made a condition of the transaction, it was so intimately connected with the principal transaction as to be part of it and in the nature of things to be incorporated with the remainder of the arrangement. The common sense of men would say that it was one of the terms of the transaction and not a separate and independent contract. Thompson v. Libby, 34 Minn. 374, 26 N. W. 1. It is not such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written agreement. Restatement, Contracts, §§ 239, 240. In the annotations the Minnesota cases are cited in accord with the rule laid down in the Restatement. If it was a separate agreement for a separate consideration, then plaintiff would be confronted by the statute of frauds. The entire theory of the plaintiff is that the contract was one contract.

The trial court was, we think, correct in holding that the contract was completely integrated and not subject to variance by parol. As said in the Pennsylvania case, 281 Pa. 320, 126 A. 791, that question was for the court.

The parties have cited numerous cases, and we have considered them all. The subject of the application of the parol evidence rule where the question of integration is involved is difficult, and the cases are confusing and often misleading, 70 A. L. R. 752, 771. The rule we adhere to places the responsibility for its application where it belongs—on the shoulders of the court, subject to review.

Judgment affirmed.

DEVANEY, CHIEF JUSTICE (dissenting).

I find myself unable to agree with the majority's opinion in this case and therefore respectfully dissent.

The sole question presented by this appeal is whether evidence may be introduced to show that the writing in this case was not intended to be the complete contract between the parties or whether the so-called "parol evidence rule" precludes such showing.

This "rule" has been the source of much difficulty and confusion. I believe that the only approach to these cases that will lead to clarity and understanding by the lawyers and the courts is that taken by Dean Wigmore. See 5 Wigmore, Evidence (2 ed.) § 2430. The whole problem is that of the intent of the parties. If the parties have intended a writing to be the only evidence of the contract between them and to cover the entire transaction, any other evidence, whether it be another writing, spoken words, or any other type of evidence, is simply immaterial. If they have not so intended, the contract must be determined by other evidence. The trial court should determine the preliminary question of intent, doing so with the aid of any evidence admissible under the usual rules of evidence. Then, whether the acts or negotiations claimed to have taken place so as to create a contract apart from any writing did take place is a question for the jury to decide.

"There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, *pro* or *con*, concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that *if* they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that *if* they did, they are legally effective, and he then leaves to the jury the determination of fact whether they did take place." 5 Wigmore, Evidence, (2 ed.) § 2430.

See also 18 Minn. L. Rev. 570; Danielson v. Bank of Scandinavia, 201 Wis. 392, 230 N. W. 83, 70 A. L. R. 746.

For the foregoing reasons, I believe that the trial court erred (1) in refusing to admit testimony to the effect that the bank stock was worth more than the par value for which it was sold; (2) in refusing to allow appellant to show the relation between the bank stock and the holding company stock; (3) in ordering judgment notwithstanding verdict for defendant-respondent. (1) and (2) would have shown the probability of the existence of the contract as claimed by the plaintiff-appellant. As stated by the trial court in a memorandum made part of the record, the "record is full of error of a prejudicial nature." The cause should be remanded to the lower court for a new trial.

