# D. W. JIMMERSON v. TROY SEED COMPANY AND OTHERS.[1]

April 25, 1952.

No. 35,642.

[1]Reported in 53 N. W. (2d) 273.

L. E. *Melrin* and *Fred K. Gage,* for appellant.

L. J. *Lauerman* and *Streissguth, Berens & Rodenberg,* for respondents.

MATSON, JUSTICE.

Appeal from an order denying plaintiff's motion for a new trial.

Plaintiff's action, based on a written contract, is for an accounting and for judgment for any sales commissions found due him for selling defendant's farm seed. By its answer, defendant asserted that the written contract did not contain the entire agreement of the parties, alleged breach of contract, and interposed three separate counterclaims for damages. The trial court found that plaintiff had earned total sales commissions of $25,805.91, had been paid only $15,273.30 thereon, and that there was a balance of $10,532.61 due plaintiff, but that he was not entitled to recover said balance because he had wrongfully breached his contract by failing to devote his *entire time* to the sales work for the full term of the contract. Defendant's counterclaims were wholly disallowed.

Defendant, a copartnership, engaged in producing and selling farm seed, in November 1946 employed plaintiff as a salesman to sell Clinton oats primarily. Because this variety of oats was not immediately available, plaintiff at first sold defendant's other seed products. In a short time, however, he began taking reservation orders for Clinton oats. In May 1947 the parties entered into an oral contract. It was not until September 22, 1947, when plaintiff expressed a desire for a written agreement for the protection of

his wife in the event that accident or illness should befall him, that the parties reduced their contract in whole or in part to writing. They then executed the following instrument:

"Sept. 22, 1947

"Agreement

"The Troy Seed Company agrees to pay in commissions to D. W. Jimmerson the following percentages of the wholesale price on the various seeds named below, from June 1, 1947, to June 1, 1948:

"Corn: $1.00 per bushel on all corn sold at $9.00 or above for flats, $6.00 or above rounds, 3% of sales of corn sold at 55% of the retail. 5% of sales of corn sold at 60% of the retail.

"Oats: 125,000 bushel of oats at $2.40 per bushel average price at 7½% of $2.40 per bushel. All other oats at straight 10c per bushel until such time that wholesale price reaches $3.50 bushel at which time a new commission basis will be arranged to mutual satisfaction of both parties.

"Soybeans: All varieties, 5%.

"Flax: All varieties, 5%.

"Barley: To be arranged at a later date.

"Other seeds: To be arranged at a later date.

"The Troy Seed Company retains all rights to set the price at which the seeds are to be sold whether the sale is to a jobber, wholesaler, retailer, or direct to the retail trade.

"*Final settlement will be made prior to June 1, 1948.* From the above date until June 1, 1948, payments of reasonable amounts will be made as mutually agreed upon.

"D. W. Jimmerson

"Troy Seed Company
By H. T. Rauenhorst, Jr." (Italics supplied.)

On the theory that the written instrument is incomplete and ambiguous and does not constitute an integration of the employment contract, the trial court admitted parol evidence, pursuant to which it found that the true agreement made by the parties was

that (1) plaintiff was to work and devote his entire time for one year, from June 1, 1947, to June 1, 1948, to selling defendant's seed, with special emphasis upon the establishment of dealerships for the sale of Clinton oats; (2) that he was to aid in collecting and servicing accounts; (3) that he was to receive commissions at a specified rate; and (4) that subject to deduction from his earned commissions, plaintiff was to receive each month $300 for his travel expenses and an additional $366 as salary.

It is undisputed that on February 24, 1948, plaintiff and another, together with their wives, organized a corporation for the purchase and sale of certain farm products and equipment. Commencing about March 1, 1948, plaintiff devoted most of his time to selling farm chemicals for the new corporation, and was therefore working only part time in furthering defendant's business. The trial court specifically found that about March 1, 1948, plaintiff, without cause and without defendant's consent, terminated his services and wrongfully breached his contract of employment.

Was it error to admit parol evidence of the oral contract? As a rule of substantive law,[2] it is well established that:

"Where, in the absence of fraud, accident, or mistake, the parties have deliberately put their contract into writing, which is complete in itself and couched in such language as imports a complete legal obligation, parol evidence is inadmissible to introduce into the contract a term which is not contained in the writing." Wheaton Roller-Mill Co. v. John T. Noye Mfg. Co. 66 Minn. 156, 68 N. W. 854.[3]

Although the only criterion of the completeness of a written contract is the writing itself, its completeness or incompleteness need not appear on its face from mere inspection, but may be ascertained, when necessary, in the light of its subject matter, purpose, and

[2] See, 18 Minn. L. Rev. 570, 571; 20 Am. Jur., Evidence, § 1100.

[3] See, also, Julius Kessler & Co. v. Parelius, 107 Minn. 224, 119 N. W. 1069.

circumstances of execution as these are disclosed by parol evidence.[4] Under no circumstances is it permissible to prove the contract incomplete by going outside the writing and proving that there was an oral *non-collateral*[5] stipulation entered into not contained in the written agreement. In Wheaton Roller-Mill Co. v. John T. Noye Mfg. Co. 66 Minn. 156, 160, 68 N. W. 854, 855, Mr. Justice Mitchell said:

"If the written contract, construed in view of the circumstances in which, and the purpose for which, it was executed,—which evidence is always admissible to put the court in the position of the parties,—shows that it was not meant to contain the whole bargain between the parties, then parol evidence is admissible to prove a term upon which the writing is silent, and which is not inconsistent with what is written; but, if it shows that the writing was meant to contain the whole bargain between the parties, no parol evidence can be admitted to introduce a term which does not appear there. In short, the true rule is that the only criterion of the completeness of the written contract as a full expression of the agreement of the parties is the writing itself; but, in determining whether it is thus complete, it is to be construed, as in any other case, according to its subject-matter, and the circumstances under which and the purpose for which it was executed."

■ The degree to which it is necessary, if at all, to go outside the writing in a particular case and resort to parol evidence for the limited purpose of making it possible to view the written contract in the light of its subject matter, purpose, and circumstances of execution, *as a preliminary step to the ascertainment of the extent to which the writing is an integration of the oral stipulations of the parties,* must as a practical matter rest in the sound discretion of the trial court. For this limited purpose of determining the com-

[4]Cargill Commission Co. v. Swartwood, 159 Minn. 1, 198 N. W. 536; Wheaton Roller-Mill Co. v. John T. Noye Mfg. Co. 66 Minn. 156, 68 N. W. 854.

[5]As to collateral oral agreements, see Taylor v. More, 195 Minn. 448, 263 N. W. 537.

pleteness of the written agreement herein, we find no abuse of discretion on the part of the trial court.

As to all essential issues, the written agreement is a complete integration of the prior oral contract, and it was error to resort to parol evidence to add to, contradict, or vary the express terms of the written instrument, inclusive of any terms implied therein by operation of law. The writing is neither incomplete nor ambiguous. The opening paragraph refers to commission rates to prevail from June 1, 1947, to June 1, 1948, but the first sentence of the last paragraph makes it clear that the term of actual employment was to be for less than a year, in that *final* settlement was to be made prior to June 1, 1948. Parol evidence adding to or varying the term of service was therefore wholly inadmissible. It is immaterial that the parties chose not to specify with exactness how long the employment term should continue beyond June 1, 1947. They might well have had in mind, in the light of the contract's subject matter and purpose, that they could not, because of uncertain weather and planting conditions in the spring, know when the seed-selling season would come to an end. If the parties had intended to stipulate for a definite term of service, it is only reasonable to assume that such stipulation would have been integrated in the writing in lieu of the express language which indicated an intent to the contrary. No finding of a breach of contract can be based on the fact that plaintiff's service terminated in March 1948.

By the writing, defendant promised to pay plaintiff a definite commission rate for the sale of oats and other seed. The actual rate for the sale of barley and varieties of seeds not mentioned is expressly left for subsequent determination. What is the consideration for defendant's promise in this unilateral contract? Although plaintiff does not expressly agree to sell seed, his obligation to sell, as a prerequisite to the earning of any commission, is implied by law. In other words, the character and nature of plaintiff's consideration by way of performance is clearly indicated. By actual performance of a substantial nature, plaintiff provided the necessary consideration for defendant's promise. Defendant asserts,

however, that the mere selling of seed was not the entire consideration for defendant's promise and that parol evidence is admissible to show that the parties had agreed that plaintiff, in addition to selling the seed, should aid in collecting and servicing the accounts. Defendant overlooks, however, that the rule permitting the true consideration of written contracts to be shown by parol evidence where the statement of consideration is nothing more than a mere recital, acknowledgment, or receipt of payment has no application where the statement of consideration is of a contractual nature such as where the consideration consists of a promise—made expressly or by implication of law—of one of the parties to perform certain services.[6] An additional parol agreement omitted from the executed writing, existing prior to or contemporaneous with that embodied in the writing, may not, under the guise of proving consideration, be added to the writing itself.[7] The terms and conditions of a written contract implied by law are no more subject to variation by parol evidence than the express terms of a contract.[8] By the express terms of the writing, sales commissions were to be paid by defendant for nothing more than plaintiff's act of selling seed. It was error to vary or add to plaintiff's contractual obligation of performance by showing by parol evidence that he was also to aid in collecting and servicing the accounts.

What has been said as to the inadmissibility of parol evidence to establish that plaintiff had agreed to work for a definite term of one year and had agreed to aid in collecting and servicing the accounts in addition to selling seed is equally applicable to the proposition that he was bound to devote his entire efforts to defendant's service. All these contractual phases are of such a nature

---

[6]Kramer v. Gardner, 104 Minn. 370, 116 N. W. 925, 22 L.R.A.(N.S.) 492; Laughren v. J. S. Nolan Sales Stable Co. 163 Minn. 85, 203 N. W. 445; Thiem v. Eckert, 165 Minn. 379, 206 N. W. 721; Gustafson v. Koehler, 177 Minn. 115, 224 N. W. 699; Flower v. King, 189 Minn. 461, 250 N. W. 43; see, Annotation, 100 A. L. R. 17.

[7]Wild v. Wild, 266 Mich. 570, 254 N. W. 208.

[8]Grant v. King, 117 Minn. 54, 134 N. W. 291; 2 Dunnell, Dig. & Supp. § 3386.

and are so closely interrelated with the subject matter that when we compare the writing with the alleged oral agreement, and take into consideration the purpose and the surrounding circumstances, we can only reasonably infer that the parties, situated as they were, if the intention had been to bind plaintiff to a definite period of exclusive employment and for services in addition to those of selling, would naturally and normally have included specific provisions therefor in their written agreement. The additional contractual terms sought to be established here by extrinsic parol evidence are not of such a nature as would be left to a collateral oral agreement as in Taylor v. More, 195 Minn. 448, 263 N. W. 537.[9]

The completeness of the writing is not impaired because parol evidence was necessary to establish the purpose and nature of the monthly payments of $300 for traveling expenses and $366 for salary. The last sentence of the agreement specifically provided for payments of reasonable amounts as the parties should mutually agree, and parol evidence of such subsequent mutual agreement was consistent with the contract and did nothing to add to, vary, or contradict the terms. See, Phoenix Publishing Co. v. Riverside Clothing Co. 54 Minn. 205, 55 N. W. 912. It is true the writing did not specify the sales territory, but this is of little significance where the employer's sales area is well known by reason of prior performance and where the entire sales work is left to one person so as to eliminate any need for a division of territory. Plaintiff had already carried on his sales work for approximately three months prior to the execution of the agreement and was familiar with defendant's territory. Furthermore, defendant had no other salesmen to compete with plaintiff for territorial rights. The fact that the immediate reason for reducing the employment contract to writing was to protect plaintiff's wife in the event that illness or accident should befall him is of no significance in determining whether the writing adopted amounted to a complete integration.

Although the order of the trial court denying a new trial must be reversed, it is unnecessary to grant a new trial. The issues as to

[9]See, 20 Minn. L. Rev. 555; Annotation, 70 A. L. R. 752.

the amount of commissions which plaintiff earned and which are now unpaid have been thoroughly litigated. This is likewise true of defendant's counterclaims, which were properly disallowed. In the light of this opinion, no breach of contract by plaintiff can be sustained, and he is entitled to recover the unpaid balance on account of commissions earned. The order appealed from is reversed, and the case is remanded to the trial court for the entry of judgment for plaintiff in accordance with this decision.

Reversed and remanded with directions.

