**Frederick L. FINTEL, Respondent,**

v.

**TRI–STATE INSURANCE COMPANY OF MINNESOTA, Appellant,**

and

**State Morristown Agency, Inc., Respondent.**

**No. 48794.**

Supreme Court of Minnesota.

July 27, 1979.

Dudley & Smith and Patrick M. Flynn, St. Paul, for appellant.

Lampe, Fossum, Jacobson & Borene, Northfield, for Fintel.

Watson, Gilsdorf, Jacobberger & Kelley and Fred R. Jacobberger, Minneapolis, for State Morristown Agency, Inc.

ROGOSHESKE, Justice.

In this action to recover for a fire loss alleged to have been insured under an oral contract made by defendant State Morristown Agency, Inc. (Morristown) as agent for defendant Tri-State Insurance Company of Minnesota (Tri-State), Tri-State appeals from the denial of its motion for a new trial and from the judgment in plaintiff's favor on the claimed insurance contract and in Morristown's favor on Tri-State's cross-claim for indemnity. We affirm.

On January 27, 1977, plaintiff asked Morristown if it could arrange fire insurance coverage on a restaurant he was about to

purchase at Waterville. He told David Vavro, Morristown's manager, he would need coverage by February 1. Vavro responded that he would have to check on available coverage and its cost, and that he would talk to plaintiff again in a few days. He testified that he then telephoned Tri-State and talked with an underwriter.[1] He further testified that after a second call late that day he obtained authority to bind coverage for $55,000—$35,000 on the building and $20,000 on its contents. The annual premium was to be about $3,600. Tri-State's three fire insurance underwriters denied recollection of any telephone calls and denied that they would have authorized Vavro to bind coverage for much more than $20,000, which they said was the maximum amount of insurance they could furnish for one risk.

Plaintiff returned to Morristown on January 31 and agreed to purchase $55,000 of fire insurance, signing an application form and making a downpayment of $787 payable to Morristown. Vavro told him insurance coverage would commence February 1, and both testified that they understood it would continue until the policy was issued or the application rejected. A few days later, Vavro prepared a written binder as proof for a mortgagee that the restaurant was insured, filling in a blank in the form to state that the insurance would be effective for 30 days. At trial he explained that it was his normal practice to specify this time period when he prepared binders. Plaintiff did not notice the provision. Both he and Vavro testified that regardless of the written binder they understood that the restaurant would be insured until the policy was received. In a conversation 5 or 6 weeks after the binder was prepared, plaintiff asked when a bill would be due on the policy, and Vavro assured him they would take care of the bill when the policy came.

On April 15, 1977, the restaurant burned, resulting in a loss stipulated to have been at least $55,000. Tri-State denied coverage, claiming that it had never received the application and that the 30-day period during which the written binder was effective had expired.

At the close of the evidence, the trial court directed a verdict for plaintiff against Tri-State on the issue of coverage pursuant to the following findings:

"I

"The plaintiff and David Vavro, the manager of defendant State Morristown Agency, Inc., either agreed from the outset that the thirty day provision in the written insurance binder would be of no effect if the applied-for insurance policy was not issued within thirty days or there was a subsequent agreement or understanding between them that the binder and application for insurance coverage would continue in full force and effect until the policy was received from the Tri-State Insurance Company.

"II

"At all times material herein, defendant State Morristown Agency, Inc. had at least apparent authority to bind defendant Tri-State Insurance Company to fire insurance coverage in an amount totalling $55,000.00 and plaintiff, at all times material herein, acted in reliance thereon. That such reliance on the part of plaintiff was justifiable."

To determine whether Tri-State was entitled to indemnity from Vavro, the court submitted to the jury the question of whether Vavro had obtained actual authority to bind that amount of coverage. The jury found upon ample evidence that he had done so. The trial judge accepted the jury determination and included it in his findings.

■ Tri-State argues that it was entitled to judgment on the issue of coverage, because parol evidence was inadmissible to vary the 30-day-coverage term of the writ-

1. The call was necessary because Morristown's agency agreement with Tri-State empowered the agency to bind fire insurance coverage of only $10,000 without obtaining approval of Tri-State. Vavro also did not have the information needed to calculate the premium.

ten binder. It is clear that the trial court correctly refused to apply the parol evidence rule. The rule is properly applied only when the parties to a contract have assented to a particular writing as the complete and accurate integration of their contract. 3 *Corbin, Contracts,* § 573. There is no evidence here that the parties deliberately put their contract into writing. *Wheaton Roller-Mill Co. v. John T. Noye Mnfg. Co.,* 66 Minn. 156, 68 N.W. 854 (1896). Instead, the evidence shows that Vavro prepared the binder chiefly for the mortgagee. His later conversations with plaintiff about coordinating payment with arrival of the policy and his and plaintiff's testimony that they had understood coverage to continue until the policy was delivered compel the conclusion that at no time did they adopt the binder as a contract superseding the oral agreement.

■ Tri-State also contends that it was improper for the trial court to direct a verdict on the issue of coverage, because that ruling was based on inconsistent legal theories. The argument is apparently based on the finding that plaintiff and Vavro "either agreed from the outset" that the 30-day provision in the written binder would be of no effect if the policy was not issued within 30 days, *or* that "there was a subsequent agreement" that the binder and application would continue in effect until the policy was received. In our view the agreements described were neither based on inconsistent legal theories nor incompatible with each other, and it is apparent that either, if supported by the evidence, together with the finding of apparent authority, results in the conclusion that as a matter of law coverage existed on the date of the loss. The undisputed evidence about negotiation of the oral contract on January 31, 1977, and the parties' intention that coverage be bound under that contract until the policy was delivered to plaintiff or his application was rejected supports a finding of an implicit agreement that the binder's terms, even though unknown to plaintiff until the loss occurred, would not affect the coverage agreed upon on January 31. Similarly, the undisputed evidence about the conversa-

tions between plaintiff and Vavro after the expiration of the 30-day period, in which they assumed continuing coverage until the policy was delivered and plaintiff was told not to worry about further payments on the premium until he received the policy, supports the finding of a "subsequent agreement." Thus, either agreement has evidentiary support and justifies the directed verdict on the issue of coverage.

We also find no merit in Tri-State's claim that certain questions asked by Morristown's counsel about a survey in which Tri-State had sought the opinions of its agents about the company's service to them were improper and prejudicial.

Affirmed.