ODENS FAMILY PROPERTIES, LLC, Plaintiff,

v.

TWIN CITIES STORES, INC., a Delaware Corporation, and Twin Cities Stores, Inc., an unincorporated Minnesota entity or proprietorship, Defendants.

No. 03–5827ADM/AJB.

United States District Court, D. Minnesota.

Feb. 25, 2005.

Stephen J. Smith, Smith and Tollefson, Owatonna, MN, for and on behalf of Plaintiff.

John M. Koneck, and Brian S. McCool, Fredrikson & Byron, P.A., Minneapolis, MN, for and on behalf of Defendants.

## MEMORANDUM OPINION AND ORDER

MONTGOMERY, District Judge.

### I. INTRODUCTION

On January 6, 2005, oral argument before the undersigned United States District Judge was heard on the cross-motions for Summary Judgment [Docket Nos. 20 and 31] of Plaintiff Odens Family Properties, LLC ("Plaintiff") and Defendants Twin Cities Stores, Inc., and Twin Cities Stores, Inc., ("TCS" or "Defendants"). Plaintiff's Complaint [Docket No. 1] alleges Defendants are the guarantor of a number of commercial leases that are in default. Defendants have refused to honor the guaranties. For the reasons set forth below, Plaintiff's Motion is granted in part, and Defendants' Motion is denied.

### II. BACKGROUND [1]

In July 2001, Twin Cities Avanti Stores, LLC ("Avanti") completed the purchase of a number of convenience stores located in Minnesota from Avanti Petroleum. Ashkar Dep. (Exhibit Index ("Ex.Index") JJ) [Docket No. 25] at 23. As part of the purchase agreement, Avanti assumed five leases from Avanti Petroleum, including the convenience stores at issue in this lawsuit ("the Stores"). Odens Aff. [Docket No. 23] ¶ 3. When Avanti assumed the leases, three of the Stores were owned by D & O Properties, LLC ("D & O"), while the fourth was owned by Gerald L. Deetz ("Deetz"). Id. Prior to providing consent to the assumption of leases, D & O and Deetz insisted Avanti's related company, TCS, guarantee Avanti's obligations under the leases. Ashkar Dep. at 24–25; Odens Aff. ¶¶ 5–6. On July 20, 2001, TCS executed guaranties for each of the Stores (the

"Guaranties"). Odens Aff. ¶ 6; Ex. Index F–I. Additionally, Avanti assumed the lease of a fifth store located in Mankato, Minnesota (the "Mankato Store"), which was also guaranteed by TCS. Odens Aff. ¶ 7, Ex. Index J.

In June 2002, the president of D & O, Michael Odens ("Odens"), was contacted regarding the sale of the Mankato Store. McCool Aff. [Docket No. 28] Ex. N; Odens Dep. (McCool Aff. Ex. E) at 54–57. The potential purchaser, Mercury Investments L.P. ("Mercury"), was aware Avanti held the lease on the Mankato Store. McCool Aff. Ex. N. On October 2, 2002, Mercury offered D & O approximately $135,000 for the Mankato Store. McCool Aff. Ex. J. This offer assumed D & O would successfully obtain agreement from Avanti to terminate its lease for the Mankato Store. Id. D & O made a counteroffer to Mercury in the amount of $400,000. Odens Dep. at 57–59. After further negotiations, Mercury agreed to this price. Id. at 46.

During this time period, D & O was simultaneously negotiating with Avanti to terminate its lease of the Mankato Store. Id. at 53–54, 57–59; McCool Aff. Ex. N. On February 27, 2003, Odens sent Anda Ashkar ("Ashkar"), general counsel for Avanti, a draft "Option to Cancel Lease Agreement," which he believed had been orally agreed to by Ashkar. Odens Dep. at 58–59; McCool Aff. Ex. F. Avanti did not execute the agreement. Id. On March 18, 2003, Avanti filed for bankruptcy. Ashkar Dep. at 31. In the wake of Avanti's bankruptcy filing, Odens and Ms. Ashkar had several conversations regarding the effect of the bankruptcy on Avanti's leases, including the potential rejection of the leases. Id. at 33–37, 43–45, 55–56.

---

1. For purposes of the instant Motion, the facts are viewed in the light most favorable to the non-moving party. As both parties have moved for summary judgment, any disputed facts are noted. See Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir.1995).

The possibility that TCS might be released from the Guaranties was also discussed. *Id.* at 33–37, 43–45.

During these negotiations, Ms. Ashkar suggested to Odens that if D & O agreed to release TCS from the Guaranties, Avanti might be willing to reject the lease on the Mankato Store. *Id.* at 43–45. According to Defendants, Odens orally agreed to this arrangement on behalf of D & O and Deetz. *Id.* at 43–45, 48. Plaintiff disagrees with this rendering of the facts, arguing Odens never agreed to release TCS from the Guaranties. On April 9, 2003, Ms. Ashkar sent a fax to Odens confirming that in exchange for Avanti's rejection of the lease on the Mankato Store, TCS would be released from the Guaranties. Odens Aff. Ex. O. The fax, however, was not received by Odens until April 10. Odens Dep. at 67. In response, Mr. Odens sent a reply fax to Ms. Ashkar, also on April 10, stating that Ms. Ashkar's fax had mischaracterized their agreement. Odens Aff. Ex. P.

Defendants claim that upon receiving Odens' April 10 fax, Ms. Ashkar immediately contacted Odens to clarify the agreement. Ashkar Dep. at 52–53. During this conversation, Odens allegedly agreed with Ms. Ashkar's interpretation of the agreement, and stated that TCS would be released from the Guaranties if Avanti rejected the lease for the Mankato store. *Id.* Plaintiff strongly disputes this interpretation of the phone call, contending that no such agreement was reached. Odens Aff. ¶¶ 12–14. Rather, Plaintiff claims Odens made clear to Ms. Ashkar that TCS would not be released from its Guaranties even if Avanti rejected the Mankato store lease. *Id.*

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. *Ludwig v. Anderson,* 54 F.3d 465, 470 (8th Cir.1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.1995).

### B. Liability

Both Plaintiff and Defendants move for summary judgment on the issue of whether Defendants are liable under the Guaranties. The dispute focuses on whether Plaintiff and Defendants reached an oral agreement wherein Plaintiff agreed to release TCS from the Guaranties in exchange for Avanti's agreement to reject the Mankato Store lease. At a minimum, Defendants argue they have raised a factual issue concerning what agreement, if any, was reached by between Odens and Ms. Ashkar. Plaintiff argues that the parol evidence rule and the statute of frauds bar consideration of the claimed oral agreement, and therefore, summary judgment is appropriate. Defendants counter by contending that even if the parol evidence rule or the statute of frauds applies, summary

judgment on their promissory estoppel claim is an appropriate remedy.

### 1. Parol Evidence

■ Where a contract is reduced to writing and is a final integration of the parties' intentions, the parol evidence rule applies. An integration clause is not required for a finding that a contract is fully integrated; rather, the criteria is whether the written contract is a full expression of the agreement. *United Artists Communications, Inc. v. Corporate Prop. Investors,* 410 N.W.2d 39, 42–43 (Minn.App.1987) (*citing Taylor v. More,* 195 Minn. 448, 263 N.W. 537, 539 (1935)). If a writing is clear and unambiguous on its face, the Court will "not [be] obliged to look beyond the face of the written contract." *Wessels, Arnold & Henderson v. National Medical Waste, Inc.,* 65 F.3d 1427, 1435 (8th Cir. 1995). "[W]here parties have reduced their contract to writing, the contract may not be proved by prior or contemporaneous utterances or writings and that these are entirely immaterial for the purpose of determining what the terms of the contract are. . . ." *Id.* (*citing Lehman v. Stout,* 261 Minn. 384, 112 N.W.2d 640, 644 (1961)).

■ Here, the contract at issue is silent as to whether TCS will be released from the Guaranties following Avanti's rejection of the Mankato Store lease. Odens Aff. Ex. Y. The contract is signed by Paul Webber, Avanti's Chief Financial Officer, Gerald Deetz on behalf of D & O and himself, and Michael Odens, as manager of Chamnic Enterprises, LLC ("Chamnic").[2] Although the contract contains no integration clause, the contract states in boldface directly preceding the signature blocks: "The below applies to the above referenced terms and conditions this 28th day of April, 2003." *Id.* The contract contains no suggestion that other oral or side agreements exist to modify the written contract. The terms of the contract are clear and unambiguous. As a result, the Court finds the contract, as written, is integrated and subject to the parol evidence rule.

Because the parol evidence rule applies to the contract, the evidence proffered by Defendants at the deposition testimony of Ms. Ashkar that Plaintiffs and Defendants reached an oral agreement to release TCS from the Guaranties is the only evidence that such an agreement existed. Since this evidence is parol and is legally barred from consideration, no issues of material fact exist, and summary judgment is appropriate. The contract does not mention the Guaranties, and the Court will not read a release of the Guaranties into the contract.

### 2. Statute of Frauds

Plaintiff also contends the statute of frauds prohibits consideration of Defendants' allegations of an oral agreement. First, Plaintiff references Minn.Stat. § 513.01(2), which states:

No action shall be maintained, in either of the following cases, upon any agreement, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party charged therewith . . .

(2) Every special promise to answer for the debt, default or doings of another. . . . There is no debate that the Guaranties fall under this provision. However, the oral agreement at bar in this dispute deals with

---

**2.** Chamnic was formed by Odens to lease the stores from Plaintiff following the lease rejec-tions.

the cancellation, as opposed to the creation, of the Guaranties. Therefore, Plaintiff also relies on Minn.Stat. § 336.2-209(3), which addresses the modification of contracts within the statute of frauds. The section states in relevant part: "The requirements of the statute of frauds section of this article (section 336.2-201) must be satisfied if the contract as modified is within its provisions." Minn.Stat. § 336.2-209(3). However, as Defendants note, section 336.2 *et seq* of the Minnesota Statutes is the Uniform Commercial Code ("UCC"), which only applies to the sale of goods. Plaintiff argues section 336.2-209(3) simply codifies the common law principle that any modification of all contracts covered by the statute of frauds must be in writing. *Wojahn v. Faul*, 235 Minn. 397, 51 N.W.2d 97, 99 (1952).

■ Given the Court's ruling that parol evidence can not be considered in this instance, it is unnecessary to rule on Plaintiff's statute of frauds argument. However, if the parol evidence rule does not bar the oral agreement, the statute of frauds does. Any modification of a contract falling under the statute of frauds must be in writing. *Id.*

As further defense to the statute of frauds argument, Defendants claim the oral agreement is enforceable because it is evidence by performance—namely, the fact that Defendants fulfilled their end of the alleged bargain by rejecting the Mankato Store lease. *See Rosenberg v. Heritage Renovations, LLC*, 685 N.W.2d 320, 325-26 (Minn.2004). However, the rejection of the Mankato Store lease can not alone establish the existence of an oral agreement between Plaintiff and Defendants. As a result, Defendants' argument does not establish the oral agreement as a matter of law.

### 3. Promissory Estoppel

■ Defendants argue that even assuming the parol evidence and statute of frauds rules apply, Defendants can recover on the theory of promissory estoppel. Promissory estoppel may imply a contract in law if: (1) a clear and definite promise was made; (2) the promisor intended to induce reliance and such reliance occurred; and (3) the promise must be enforced to prevent injustice. *Olson v. Synergistic Tech. Bus. Sys., Inc.*, 628 N.W.2d 142, 152 (Minn.2001). However, promissory estoppel can not be used to alter the terms of a contract that has been reduced to writing. *UFE Inc. v. Methode Electronics, Inc.*, 808 F.Supp. 1407, 1410 (D.Minn.1992) (*citing Del Hayes & Sons, Inc. v. Mitchell*, 304 Minn. 275, 230 N.W.2d 588, 593 (1975)).

■ Defendants argue they have presented, at a minimum, evidence to raise material issues of fact to each of these elements. However, the alleged oral agreement undisputedly alters the terms of the Guaranties. There is no dispute the Guaranties were reduced to writing. As a result, promissory estoppel may not modify or cancel the Guaranties. Further, Plaintiff correctly argues that reliance on an oral representation is unjustified when the representation directly contradicts the terms of a written agreement. *See, e.g., Johnson Bldg. Co. v. River Bluff Dev. Co.*, 374 N.W.2d 187, 194 (Minn.Ct.App.1985).

Because the evidence of the oral agreement proffered by Defendants can not be considered under the parol evidence rule and the statute of frauds, and because Defendants can establish a basis to apply promissory estoppel, the undisputed material facts remaining clearly demonstrate the existence and validity of the Guaranties, which are enforceable. As a result, judgment will be found for Plaintiff.

## C. Damages

### 1. Present Damages and Duty to Mitigate Damages

Given the finding of liability, Plaintiff is entitled to damages. The amount of damages, however, is hotly contested between the parties. Plaintiff bases its argument for damages on the premise that commercial landlords are under no duty to mitigate damages. As a result, Plaintiff claims it is entitled to recover all rent due under the lease. Defendants respond that Plaintiff is under a duty to mitigate its damages; therefore, any recovery by Plaintiff must be set off by any rent it has collected since the rejection of the leases.

■ In Minnesota, commercial landlords are under no obligation to mitigate damages by reletting abandoned premises. *Control Data Corp. v. Metro Office Parks Co.*, 296 Minn. 302, 208 N.W.2d 738, 740–41 (1973) (*citing Gruman v. Investors Diversified Services, Inc.*, 247 Minn. 502, 78 N.W.2d 377 (1956)). Although Defendants cite general Minnesota contract principles for the proposition that any party to a contract has an obligation to mitigate damages, they proffer no authority for the proposition that this duty overrides the explicit holdings set forth in the above-cited cases.

■ Both Plaintiff and Defendants cite contractual language in support of their arguments, focusing on the following: "Landlord shall not be required to relet the demised Premises or to accept any proffered Tenants or otherwise attempt to mitigate its damages, in the event that any advance rental has been paid hereunder." Ex. Index Nos. A–D. Defendants argue that, by negative implication, this clause implies that if advance rental was not paid, Plaintiff had a duty to mitigate damages. Because Defendants paid rent on a monthly basis, Plaintiff was under a duty to mitigate damages, with the exception of the final month in which Defendants paid rent. In response, Plaintiff argues the lack of any language suggesting it had a duty to mitigate in the event rent was not paid in advance is dispositive.

■ Plaintiff's response to Defendants' interpretation of the mitigation clause is unavailing. If Plaintiff's interpretation of the mitigation clause were accepted, it would render the final clause of the paragraph discussing advance rental meaningless. Because the contract specifically states when the landlord does not have a duty to mitigate, the clear implication is that the landlord does have a duty to mitigate in other circumstances. It is well established in contract interpretation that interpretations which render language meaningless, or fail to give effect to all language in a contract, are to be avoided. *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn.1990). As a result, the Court finds the cited mitigation clause imposes a duty upon Plaintiff to mitigate damages.[3]

■ Although the Court finds Plaintiff was required to mitigate damages, a number of factual issues preclude summary judgment on the amount of damages. Fact issues exist as to the lease differential damages, as it is not clear whether management fees paid by Plaintiff's tenant, Chamnic, were or should be included in the damages calculation. Fact issues also exist as to whether Defendants are respon-

---

**3.** Although Plaintiff cites other clauses within the contract in an attempt to bolster its argument that it has no duty to mitigate, these arguments are also unavailing. Plaintiff bases its claims on clauses governing the requirement of the landlord's consent to sublet the premises and the right of re-entry. However, neither of these clauses support Plaintiff's argument, and certainly neither overrides the implicit language of the mitigation clause itself.

sible for the GMAC settlement costs. Finally, issues of material fact exist as to the capital expenditures made by Plaintiff, and whether Defendants are liable for those costs. As a result, summary judgment on the amount of damages is inappropriate on the record before the Court.

### 2. Future Damages

In addition to arguing for present damages, Plaintiff contends it is entitled to sue for future damages because Defendants have rejected their obligation to pay on the lease. Plaintiff admits whether the doctrine of anticipatory repudiation applies to leases has not been decided. Plaintiff therefore asks the Court to determine that it is entitled to damages based on general contract law. In support of its argument, Plaintiff cites instances in which Minnesota courts have found an anticipatory breach allows recovery for future damages, although none are in the leasehold context. *See, e.g., Engel v. Mahlen,* 153 Minn. 1, 189 N.W. 422 (1922); *Sheet Metal Workers Local No. 76 Credit Union v. Hufnagle,* 295 N.W.2d 259 (Minn.1980). Additionally, Plaintiff points to authority from other jurisdictions which allow a lessor to recover future rent when a tenant fails to pay rent and repudiates the entire lease. *See, e.g., Sagamore Corp. v. Willcutt,* 120 Conn. 315, 180 A. 464 (1935); *Hoyt v. Horst,* 105 N.H. 380, 201 A.2d 118 (1964).

In response, Defendants argue no Minnesota authority exists for the proposition that anticipatory repudiation of a lease entitles a lessor to future damages. Defendants also note the leases do not include acceleration provisions, which would allow Plaintiff to claim all outstanding rent for the remainder of the leases. Defendants cite *Ambrozich v. City of Eveleth* in support of their argument: "There is no

obligation to pay until the rent is due according to the terms of the lease. Rent to be paid in the future is not a debt or liability for the recovery of which a present action will lie." 200 Minn. 473, 274 N.W. 635, 640 (1937).[4] Because Minnesota law indicates an anticipatory breach will not accelerate rent without an acceleration clause, summary judgment is denied on the issue of damages.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [Docket No. 20] is **GRANTED** in part as to liability and **DENIED** in part as to damages, and

2. Defendants' Motion to for Summary Judgment [Docket No. 31] is **DENIED**.

---

4. Recently, the Minnesota Court of Appeals affirmed this decision in an unpublished opinion. *Eickhof v. Health Dimensions Rehabili-* *tation, Inc.,* No. C4–99–1908, 2000 WL 558154, at *3 (Minn.Ct.App. May 9, 2000).