## IN RE IMPROVEMENT OF THIRD STREET, ST. PAUL.
## BUCKBEE-MEARS COMPANY, APPELLANT.[1]

December 6, 1929.

No. 27,439.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for appellant. *Eugene M. O'Neill,* for respondent.

Holt, J.

In condemnation proceedings for the widening of Third street by the city of St. Paul a lot and the building thereon were taken. Prior thereto and on January 14, 1927, appellant obtained from the fee owner a lease until July 31, 1937, to a part of the building. It was awarded damages for its leasehold interest in the sum of $152.20. It appealed to the district court. The award was confirmed. From the order denying a new trial this appeal is taken.

[1]Reported in 228 N. W. 162.

The facts are admitted. The lease contained this provision:

"If the premises or any part thereof, or any part of the improvements of which they form a part, shall be taken for any street or other public use, or shall, during the continuance of this lease, be destroyed by the action of the public authorities, then this lease and the term demised shall at the option of either party terminate."

It was stipulated that "were it not for that [the quoted] clause in the lease the value of the leasehold interest of the appellant, taking into consideration the improvements (other than the trade fixtures) which it has placed upon said premises, is the sum of $12,500." It was also agreed at the trial "that the lease was terminated by reason of the condemnation and taking by the city of the entire premises of which the demised portion covered by this lease formed a part."

The contention of appellant is substantially this: The lease was put to an end by the condemnation proceeding and not by the exercise of the option in the lease. When so appropriated, the opportunity of the lessor to exercise the option was gone. He was released from the covenants of the lease, as was also the lessee. The right of each to compensation for the separate estate and interest taken became fixed at the moment of the taking, and neither the lessor nor lessee could thereafter affect the same by any notice or option under the lease. Appellant supports these contentions by Shipley v. Pittsburg, C. & W. R. Co. 216 Pa. 512, 65 A. 1094, 1095. We do not think the decision controls here because of the dissimilarity in the clauses of the two leases. There as here the leased premises were taken under the right of eminent domain; but the clause there in question read [216 Pa. 515]:

"And the said parties of the second part covenant and agree that they will remove from and give peaceable possession of the premises hereby leased within ten days after he shall have received from the lessor notice to vacate the premises."

This provision had not in contemplation the ending of the term by condemnation proceedings, but was the reservation by the lessor

of the right absolutely to terminate the lease by a ten-day notice. The lessor gave no notice. The railroad company rested upon an oral notice to the lessee to look for other quarters, given by it when it filed its bond to secure the lessee's compensation, as required by the Pennsylvania law in eminent domain proceedings. The court held that the condemner had no right to give such notice. In taking the premises it did not step into the shoes of the lessor. This is true, for the title acquired through a proceeding in rem under the right of eminent domain is an independent one, not derived from the owner of the land. Weeks v. Grace, 194 Mass. 296, 80 N. E. 220, 9 L.R.A. (N.S.) 1092, 10 Ann. Cas. 1077. And the court concluded that no notice having been given by the lessor to end the lease, the condemner, the railway company, could not give it and must pay compensation for taking the remainder of the term.

In the instant case the parties evidently apprehended that the leased premises would be interfered with or taken by the city before the end of the lease they were making. They were not willing to let their rights rest upon the settled law applicable when property under lease is taken under the right of eminent domain. So the quoted clause was inserted. Its fair meaning appears to us to be that the term should end if and when the city took the entire leased premises; but if only part were taken then either party had the option to end the term. If the whole demised premises were taken nothing remained upon which either party could predicate an election or option. Hence, the whole premises being appropriated and the parties having stipulated that that event ended the term, the lessee could claim no compensation for its leasehold except up to the time it thus ended, and the lessor became entitled to full compensation for the whole estate undiminished by any claim from the former lessee. As we construe the quoted clause of the lease, its meaning was that in the event of the city's appropriating the whole of the demised premises the lessee's share in the damages was gone.

This was the result arrived at in Goodyear S. M. Co. v. Boston Terminal Co. 176 Mass. 115, 57 N. E. 214, 215, where the lease contained a similar clause for the termination of the term in the event

of a taking of the premises by virtue of the right of eminent domain, such termination to be "at the election of the lessors." The court said with reference to this provision for termination [176 Mass. 117]:

"The object is that which is pointed out in Munigle v. City of Boston, 3 Allen, 230, 232, and the meaning is that the landlord can terminate the right of the tenant to share in the damages. * * * Probably if the clause had not dealt with the taking of a part as well as of the whole, and had referred only to a taking of the whole, it would have stipulated absolutely that the tenant's right should end, without requiring an election by the landlord. The election is inserted with reference to a partial taking."

There the condemner had acquired the reversion or lessor's estate before condemnation and had given notice. The decision however seems to be in point in construing the clause of the lease of similar import to the one here involved.

The respondent and the court below deemed Kafka v. Davidson, 135 Minn. 389, 391, 160 N. W. 1021, 1023, decisive against appellant's recovering the $12,500. That lease contained a provision giving the lessor "the absolute right to terminate the lease at any time on giving" the lessee 60 days' notice in writing of his intention so to do and paying to him $1,500. We held that the taking of a substantial part of the demised premises, rendering the same untenantable, terminated the lease, so that the lessee could recover for his estate only the sum stipulated plus any proper allowance "for any excess of the fair rental value of the premises over and above the rent reserved by the lease for a period of 60 days." [135 Minn. 395.] But it is obvious that the decision recognized the right of the lessee to recover damages or compensation for the unexpired term of the leasehold taken, that is, for the 60 days subsequent to the notice given by the lessor to terminate. The question now before us was not presented in the Kafka case. There involved was the measure of compensation to the lessee for the unexpired term of 60 days. Here the controversy depends upon the provision of the lease that the taking by the city of the entire demised premises

in and of itself puts an end to the term, so that nothing of an un-expired term remains for which compensation can be claimed. In short, we think the parties by the provision in the instant lease in-tended that in case of the city's taking, under the right of eminent domain, the entire demised premises, the whole compensation there-for should go to the lessor.

The order is affirmed.