STATE, BY MILES LORD, ATTORNEY GENERAL,
v. CATHERINE PAHL AND OTHERS.
LeGRAND LULL, d.b.a. LULL ENGINEERING
COMPANY, APPELLANT.

100 N. W. (2d) 724.

January 15, 1960—No. 37,667.

*Grannis & Grannis,* for appellant.

*Miles Lord,* Attorney General, *Robert W. Mattson,* Deputy Attorney General, and *Richard J. Gunn,* Special Assistant Attorney General, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Proceedings by the state for condemnation for trunk highway purposes of a tract of land 50 feet by 165 feet with a building thereon located at 7716 Cedar Avenue South in Richfield, Hennepin County. Rolland A. Rueger and Floyd W. Bolkcom were named in the proceedings as fee owners of the property, and LeGrand H. Lull, d.b.a. Lull Engineering Company, hereafter referred to as Lull, was named as holder of a leasehold interest therein.

On December 19, 1955, the petition was filed in the District Court of Hennepin County. On February 15, 1957, commissioners appointed by the district court made their report awarding compensation for the taking as follows:

"For the taking thereof and any damages to the remainder, and all interests therein, we award $12,500.00, and no more, for said lands considered as an entirety * * *.

"* * * apportioned to the persons hereinafter named, as follows:
"A.  Rolland A. Rueger
     Floyd W. Bolkcom
     Marilyn Rueger
     Delcine Bolkcom
     Village of Richfield
     Charles J. Rueger
     Lillian M. Rueger                                    $12,500.00
"B.  LeGrand Lull, doing business as Lull Engineering
     Company                                              None
                    *     *     *     *     *

"The above award is made on the * * * condition that the owners [Lull] of the frame addition to the above mentioned concrete block building shall remove the said addition and improvements thereon from the lands acquired herein before May 1, 1957, * * *."

On March 14, 1957, Lull appealed to the district court from the award, contending that as of the date of its filing he ceased to have any right in the structure described; that the state thereupon had the sole right to its possession; that the commissioners lacked power to attach a condition to the award which required removal of the frame structure from the premises; and that therefore he was entitled to be compensated for it by the state at its fair market value.

The lease, dated December 28, 1954, was for a period of 1 year from January 1, 1955, with an option for an additional year which had been exercised by Lull so that by its terms it expired on December 31, 1956. It contained the following provision:

"It is further agreed by lessors that * * * Lull, heretofore has and may in the future construct on the above described lot, such building or units as are necessary for the continuation of his said business and * * * that said L. H. Lull may remove upon the termination of this lease or any renewal or extension thereof, any buildings, units or structures heretofore or hereafter erected or placed by him on said lot, it being specifically agreed that said buildings, units or structures are and shall remain personal property."

At the trial the state moved to dismiss the appeal on the ground that Lull's interest in the premises had expired at the expiration of his lease on December 31, 1956, so that on February 15, 1957, the date of the award, his only right therein was to remove the frame structure. On July 16, 1958, the district court made an order dismissing the appeal on the grounds stated in the motion. The present appeal is from this order.

Subsequently Lull moved for an order correcting the record by adding to it the separate affidavits of one Pat Lamb and one Norman Anderson, both dated July 26, 1957, and a joint affidavit made by Rolland A. Rueger and Floyd W. Bolkcom dated August 17, 1957; and for a rehearing of the motion to dismiss. This motion was granted

180

and after the record was thus corrected and further arguments submitted, the court again dismissed the appeal on the same ground as before "because the Court finds that as a matter of law, the allegations made in the Affidavits, even if taken as true, create no compensable interest in * * * LeGrand Lull, doing business as Lull Engineering Company * * *."

In so far as they are material, the affidavits set forth the following:

### Affidavit of Pat Lamb

That he had been an employee of L. H. Lull during 1953; that the structure on the premises was then a bare cement block building; that during 1953 Lull had erected a frame garage thereon which originally had not been attached to the cement block building; that during 1954 Lull built a further frame addition to the premises which was attached to the cement building so that by the first of 1955 the buildings erected by Lull were attached to the building he had originally rented;

That before the frame buildings were built affiant had carried out negotiations with Rueger and Bolkcom and secured their approval for such work;

That it was then agreed by all parties "that in the event the * * * premises was sold, the proceeds of the sale would be divided proportionately between Mr. Rueger and Mr. Bolkcom, as the owners of the original building, and Mr. Lull, as the owner of the attachments placed thereon, and that said division would be made proportionate to the value of each party's respective interest";

That the provision for removal of the frame structures was inserted in a subsequent lease at the request of Rueger and Bolkcom "because they did not want to be in a position of being forced to buy the buildings and attachments at its reasonable value"; that in addition the possibility was also discussed that the property with the attachments and equipment might be rented out to a third party; that it was further agreed that "the lease could be renewed from time to time upon the same terms and conditions as contained in the original lease with the exception only that Mr. Lull would pay the increased amount of the real estate tax" caused by the erection of the structure described; and that the only reason the lease was not renewed for 1957 was because

in 1956 the state had served notice that the property was being condemned, making it imperative that Lull find a new site for his business.

## Affidavit of Norman Anderson

That he had been an employee of Lull since December 1952; that early in 1953 Lull had erected a frame structure on the Cedar Avenue premises; that following this another frame addition was built and attached so that all such structures became attached by the first of 1955;

That during 1953 various conferences were had by Lamb and the owners of the premises to obtain approval for the additional structures, at which affiant was frequently present;

That it was definitely understood at the time that in the event the premises were sold the proceeds of such sale "would be divided proportionately between Mr. Rueger and Mr. Bolkcom as the owners of the original building and Mr. Lull as owner of the attachments placed thereon and that said division would be made proportionate to the value of each party's respective interest"; and that following the condemnation proceedings, two conferences were held between Rueger and Bolkcom and affiant at which time Rueger and Bolkcom confirmed the agreements described.

## Joint Affidavit of Rueger and Bolkcom

That the only additional agreement which they as lessors and Lull as lessee had made other than the written lease was contained in a letter dated December 28, 1954, which in substance set forth that if the real estate taxes due and payable in 1955 exceeded the amount of $90 on the property the lessee would reimburse them for that portion that exceeded $90;

That at the times mentioned in the affidavits of Lamb and Anderson, April 29, 1957, and February 8, 1957, there had been certain conferences at which no agreements of any kind had been made which would change the term of the original lease; that no new agreement either orally or in writing had ever been made; and that the written lease and letter referred to contain all agreements between the parties.

On appeal it is contended that the affidavits created a fact issue as to whether there was any oral modification of the lease which gave Lull a compensable interest in the premises.

■ In condemnation proceedings the owner of an interest in premises to be taken thereunder is entitled to compensation for such interest at its fair market value. Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 277 N. W. 394, 124 A. L. R. 897. Ordinarily such value is determined as of the date of the taking rather than as of the date of the institution of the condemnation proceedings, Housing and Redevelopment Authority of City of St. Paul v. Greenman, 255 Minn. 396, 96 N. W. (2d) 673; and the former is generally held to be that upon which the commissioners appointed by the court file their award of damages in the proceedings. State, by Peterson, v. Bentley, 231 Minn. 531, 45 N. W. (2d) 185; Ford Motor Co. v. City of Minneapolis, 143 Minn. 392, 173 N. W. 713.

■ From the foregoing it follows that Lull can claim compensation from the state in these proceedings only if he owned a compensable interest in the premises described on February 15, 1957, the date the commissioners' award was filed. The record before us clearly indicates that he failed to establish any such interest as of that date. By the terms of the lease, upon which he must depend to establish such a compensable interest, the frame structures described were designated *personal property,* and the *only* right therein reserved to him was the right to remove them upon termination of the lease. As indicated above, this occurred December 31, 1956, several weeks before the date of the filing of the commissioners' award on February 15, 1957. Accordingly, it must follow that on the latter date Lull's only right in the premises was to remove the structures from the premises within a reasonable time and for such right of removal the commissioners made due allowance in their award.

■ There is nothing in the statutes relating to condemnation in eminent domain proceedings which prohibits the inclusion of a condition of this kind in an award or which requires that the state purchase personal property which is to be removed upon the termination of a lease. State, by Attorney General, v. Riley, 208 Minn. 6, 293 N. W. 95; State, by Attorney General, v. Riley, 213 Minn. 448, 7 N. W. (2d) 770; Korengold v. City of Minneapolis, 254 Minn. 358, 95 N. W. (2d) 112. As this court stated in the first Riley case (208 Minn. 8, 293 N. W. 96):

"\* \* \* the only inference possible as to McCarthy's rights is that \* \* \* he occupied the property [taken in condemnation proceedings] under revocable license and with unconditional right to remove it if the license were revoked. If that is the situation, it is impossible to see any basis for a claim by him to any part of the fund. His house was not taken. The condemnation revoked his license to occupy the ground. He removed his building, which was his only right. So he was not damaged, \* \* \*."

In Korengold v. City of Minneapolis, *supra,* we held that a lessee had no compensable interest in property taken in condemnation proceedings where the landlord and tenant relationship terminated upon appropriation of the real property by the city. There it was said (254 Minn. 363, 95 N. W. [2d] 116):

"Since appellant can and is free to remove his equipment and fixtures and the condemnor has not appropriated said fixtures or equipment, the lessee's rights are in that respect the same as if the lease in question had terminated naturally, \* \* \*."

■ Nor do the affidavits submitted by Lamb and Anderson, taken at their face value, establish modification of the written lease to the extent of creating any additional rights in the premises for Lull. They relate to conversations occurring long prior to the written lease and not incorporated therein when it was executed. These conversations, if the affidavits are true, establish nothing more than that there was a collateral agreement made by the fee owners and Lull providing that, if the leased premises, including all structures thereon, were sold, the proceeds of such a sale would be divided between them in proportion to the value of their respective interests. But of at least equal force therewith is the clause in the written lease that upon its *expiration* the only interest which would survive in Lull was his right to remove his structures from the premises. The state's acquisition of the real property on February 15, 1957, after the lease had expired, can scarcely be regarded as a sale of the premises such as was contemplated by the claimed oral agreement. Since there was no such sale, this provision never came into effect. Jimmerson v. Troy Seed Co. 236 Minn. 395, 53 N. W. (2d) 273; Doyle v. Wohlrabe, 243 Minn. 107, 66 N. W.

(2d) 757. The right-of-removal clause, however, did remain in effect after the lease expired and was recognized by the commissioners. This is the most that could be required of the state in such a situation. Affirmed.