## SUGARMAN v. MAYOR AND CITY COUNCIL OF BALTIMORE et al.

[No. 246, September Term, 1962.]

*Decided May 24, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ.

The Court declined to hear argument for the appellees.

*Robert L. Sullivan, Jr.*, with whom were *William J. Pittler* and *Sklar & Sullivan* on the brief, for appellant.

*Frank, Bernstein, Gutberlet & Conaway, Frank A. Kaufman* and *Lawrence F. Rodowsky* on the brief for Jane G. Levy, et al., part of appellees.

No brief and no appearance for Mayor and City Council of Baltimore, other appellee.

Brune, C. J., delivered the opinion of the Court.

This suit began as a condemnation proceeding brought by the City of Baltimore (the City), one of the appellees, against the executors and trustees under the will of Milton E. Gundersheimer, deceased (collectively referred to below as the "landlords"), also appellees, against George B. Sugarman (referred to below as the "tenant"), the appellant, and against the mortgagee of the property to be taken. (The mortgagee has taken no part in the controversy here presented.) The tenant claims that he is entitled to share in the amount payable by the City, and the landlords deny it. The tenant appeals from an order upholding the landlords' contentions.

The property in question consists of three lots and the improvements thereon known as 21-23 West Baltimore Street, and its acquisition was sought by the City as a part of the Charles Center urban renewal and redevelopment project. The first floor and basement had been leased by the decedent to the tenant under a lease dated December 30, 1952, expiring on August 31, 1960. On July 15, 1957, the decedent and the tenant entered into a new lease to commence on September 1, 1960, for a term of five years ending August 31, 1965, with an option to the tenant to renew the lease for another five years upon terms stated. This lease is comprehensive and includes a specific paragraph dealing with a taking by condemnation, reading as follows:

> "Twenty-Third: In the event that condemnation proceedings are instituted against the premises hereby demised, and title taken by any Federal, State or Municipal body, then this Lease shall become null and void, and the Tenant shall not be entitled to receive any part of the award which may be received by the Landlord."

It seems evident that there were some negotiations between the City and the landlords preceding the institution of these proceedings and that an understanding was reached that there would be no controversy over a valuation of $174,000.00 for the property in fee. The tenant stated in his brief that he re-

fused to join in a voluntary conveyance to the City. It seems immaterial whether he was (as the landlords state) or was not (as the tenant states) offered some compensation for joining in such a conveyance. He evidently considered himself entitled to something, or to more than he was offered, and he refused to join in a conveyance. These proceedings ensued.

The petition for condemnation was filed on June 5, 1962. The landlords filed a petition to have certain issues determined in advance of trial (under Maryland Rule 502), and a hearing was held thereon on June 26, 1962. The issues were in brief: (1) whether the tenant had any interest in any award which might be rendered in view of Paragraph Twenty-Third of the lease, above quoted; and (2) whether this Paragraph applied where the City and the landlords submitted an agreed valuation upon which an inquisition was to be based. Chief Judge Niles held that the answer to the first issue was "No," and to the second, "Yes."

After Judge Niles' rulings had been made a stipulation signed by counsel for all parties was filed, which provided: (1) that a jury trial was waived; (2) that the award of the court should have the same effect as that of a jury and thus might be made after the submission of an agreed valuation of the fee simple, with the same legal effect as if such valuation had been submitted to a jury as the basis for an inquisition; and (3) that the stipulation was without prejudice to any contentions which any party might assert, including those concerning the validity or applicability, or both, of the special issues determined orally on June 26 and by order on June 28, 1962. On July 18, the case was tried before Judge Harris. An agreed stipulation as to value in the amount of $174,000.00 was filed, the petition for condemnation was granted, and judgment absolute in favor of the defendants for $174,000.00 was entered.

The appellant contends that the purchase of the premises by the condemning body under a private agreement between it and the lessors will not terminate the lease under a taking-by-condemnation clause so as to divest the tenant of his interest in the property. This argument assumes a premise which is not supported by the record. It is doubtless true that the landlords were willing to part with the property for a consideration of

$174,000.00, out of which the remaining mortgage indebtedness would have to be paid. It is also evident that they were unwilling to part with the property at such a price if the tenant were entitled to share in the proceeds (at least to any substantial extent). We think that Judge Niles' conclusion that no binding contract of sale has been entered into, no written contract having been offered in evidence or claimed to exist, was well warranted.

In this connection we may add that the tenant's argument seems to be predicated upon some theory that the absence of an actual, written contract was a means or subterfuge to defeat his right to receive compensation for the termination of his lease. We find, however, no trace of any fiduciary or confidential relationship, or of any obligation, contractual or otherwise, which would have required the landlords, in the face of prospective condemnation proceedings, to seek to make a private sale of the premises to the prospective condemnor, rather than to submit to condemnation (whether on a stipulated or a contested valuation). The only effect of a private sale as against condemnation would have been to benefit the tenant at the expense of the beneficiaries of the estate of the original landlord, the decedent. The amount that the City would voluntarily pay was fixed. Of course, some modest payment from that sum to the tenant to induce him to join in a voluntary conveyance might well have been justified as a business matter to avoid the delay and expense of condemnation, but the fiduciary duties of the landlords (whether as executors or trustees) clearly ran to the beneficiaries of the estate of the deceased original lessor and not to the tenant, and they could not properly have been expected or called upon to sacrifice them. This consideration should have, and doubtless did, deter the landlords from making a voluntary sale when the tenant refused (as his brief says he refused) to "execute the documents which would vest title in the [City]."

Since the City needed the property for the Charles Center project, it instituted these condemnation proceedings.

The condemnation clause here involved differs materially from that considered by this Court in *Belmont Clothes, Inc. v. Pleet,* 229 Md. 462, 184 A. 2d 731. The clause there involved

related to the property being condemned and thereby rendered untenantable by the exercise of the police power relating to health or safety matters, but was held not applicable to a taking by eminent domain. In the instant case, there is no room for an interpretation of the condemnation clause that would not explicitly cover a taking by eminent domain. The exact terms of that clause have been met. Condemnation proceedings have been instituted against the demised premises by a municipal body and title has been taken by it upon payment of the purchase price fixed in the condemnation proceedings.[1] Accordingly, under its terms, the lease has become null and void, and the tenant is not entitled to receive any part of the award. By his contract, he has cut off the right which he might otherwise have had (see *Belmont Clothes, Inc. v. Pleet, supra,* 229 Md. at 467, and cases therein cited) to receive compensation for loss due to the termination of his lease. Here, under Paragraph Twenty-Third of the lease he is not entitled to any part of the award to the landlords. *United States v. Petty Motor Co.,* 327 U. S. 372; *United States v. 21, 815 Sq. Ft. of Land,* 155 F. 2d 898 (C. C. A., 2d); *United States v. 8286 Sq. Ft. of Space,* 61 F. Supp. 737 (D.C., Md., Chesnut, J.); *In re Widening Third St.,* 228 N. W. 162 (Minn.); *Capitol Monument Co. v. State Capitol Grounds Comm.,* 251 S. W. 2d 473 (Ark.); *Territory of Hawaii v. Arneson,* 354 P. 2d 981 (Hawaii); *State of Oregon v. Oregon Investment Co.,* 361 P. 2d 71 (Ore.); 2 *Nicholas, Eminent Domain,* § 5.23 (2), pp. 41-42. There is also a clear indication in *Belmont Clothes, Inc. v. Pleet, supra,* 229 Md. at 466-67, that under a clause such as we have here, the tenant has no right to any part of the condemnation award.

> *Judgment affirmed; costs to be*
> *paid by the appellant.*

---

1. The claims of the mortgagee under the two mortgages which it held are not in controversy and appear to have been paid by the City directly to the mortgagee. The balance of the purchase price was first paid into the registry of the court per court order, and by a subsequent order was paid over to the trustee landlords for investment in savings bank deposits and Government bonds pending this appeal, to be held subject to the further order of the court.