COUNTY OF HENNEPIN v. VIOLET K. HOLT
AND OTHERS.
TEM-TROL, INC., APPELLANT.

207 N. W. 2d 723.

May 4, 1973—No. 43762.

*Lewis L. Anderson,* for appellant.

*Richard Ince,* for respondents Richard and Mardelle Holt.

*Hyman Edelman,* for respondent Violet K. Holt.

*George Scott,* County Attorney, and *Floyd B. Olson,* Assistant County Attorney, for respondent county.

Heard before Knutson, C. J., and Otis, Rogosheske, and Olson, JJ.

ROGOSHESKE, JUSTICE.

Tem-Trol, Inc., lessee under a written lease of premises owned one-half by Richard and Mardelle Holt and one-half by Violet Holt, appeals from a declaratory judgment limiting its rights to an apportionment of a condemnation award made by commissioners in proceedings instituted by Hennepin County to take the entire leased premises for public use. Tem-Trol's principal challenge to the judgment is that neither the Holts' nor Hennepin County's appeal from the commissioners' condemnation award gave the district court jurisdiction over that part of the award apportioned to Tem-Trol. It also challenges the court's construction of the lease whereby it found a termination of the leasehold interest 30 days after condemnation and denied Tem-Trol's claim for the value of leasehold improvements. We hold that the owners' appeal from the gross award gave the district court jurisdiction over the question of apportionment to the lessee and that the court, in limiting the lessee's rights to share in the award, correctly interpreted the lease. Accordingly, we affirm.

In January 1971, Hennepin County initiated condemnation proceedings against the real property owned in fee by the Holts and leased to Tem-Trol. By written stipulation, all parties agreed to surrender physical possession of the premises to the county on August 19, 1971. That date thereby became the effective date of taking. The lease in effect at that time, which was to expire on December 31, 1973, provided that if more than 25 percent of the premises was condemned, either party to the lease had the option to cancel it by giving notice within 30 days of the taking. It further expressly provided that, regardless of the amount of the taking, Tem-Trol waived all claims against the fee owners on account of such taking but reserved its rights, if any, to seek damages from the condemning authority for any damages to its leasehold estate and leasehold improvements.

On October 19, 1971, the commissioners filed their final report, making a gross award of $200,000 to the following persons:

Violet K. Holt, Richard Fries Holt, Mardelle F. Holt, Tem-Trol, Inc., the city of Minneapolis, and Hennepin County. Regarding the apportionment of the award, the commissioners provided:

"The above gross award has been apportioned as follows: Violet Holt, Richard Fries Holt and Mardelle F. Holt $170,000.00, fee owners, and TemTrol, Inc. $30,000.00 for damages as tenants. Tenant shall pay current real estate taxes, and fee owners shall pay any unpaid special assessments."

Hennepin County appealed from this award on the ground that it was excessive. Richard and Mardelle Holt also appealed, alleging (1) that the award was inadequate, and (2) that apportioning $30,000 of the award to Tem-Trol and requiring the Holts to pay the special assessments was contrary to the provisions of the lease. Both notices of appeal were served on Tem-Trol, which filed no appeal from the award.

The owners moved the court for summary judgment declaring their rights under the provisions of the lease. In response to the Holts' motions for summary judgment, the district court held that Tem-Trol was required to pay the special assessments; that its recovery for its leasehold interest was limited to its leasehold advantage for a 30-day period, determined by the difference between the rent specified in the lease and the market rental value for that period; and that it could additionally recover out of the award only the reasonable value of the *use* of its leasehold improvements from the date of the taking to December 31, 1973, the expiration of the lease, rather than the *value* of the improvements.

1. Tem-Trol's principal challenge to this judgment is that the notices of appeal by the Holts and Hennepin County did not give the district court jurisdiction over that part of the commissioners' award granting $30,000 to Tem-Trol. Minn. St. 1969, § 117.20, subd. 4, provides:

"At any time within 40 days from the date of the filing of the report, any party to the proceeding may appeal from any award

of damages embraced in the report, or from any omission to award damages, by filing with the clerk a notice of such appeal; which shall specify the particular award or failure to award appealed from, the nature and amount of the claim, the land to which it relates, and the grounds of the appeal; and upon appeal the prevailing party shall recover costs and disbursements."[1]

Tem-Trol argues that the notices of appeal were ineffective because, it claims, they did not specifically state the appeals were from the $30,000 awarded to Tem-Trol and because of duplicity, which Tem-Trol claims resulted from challenging two different awards in the same notice of appeal—that of $170,000 to the fee owners and that of $30,000 to Tem-Trol.

It is elementary that the right of appeal from condemnation proceedings is strictly statutory, and unless the statutory provisions are followed, the court obtains no jurisdiction. State, by Ervin, v. May, 204 Minn. 564, 285 N. W. 834 (1939); State, by Lord, v. Radosevich, 249 Minn. 268, 82 N. W. 2d 70 (1957). Whether we proceed under the statutory requirement that notices of appeal specify the particular award appealed from or under the common-law doctrine proscribing duplicitous appeals, the gist of Tem-Trol's argument is that the commissioners' apportionment of the award constituted a separate award to Tem-Trol which was independent in law and fact from the total award

---

[1] The entire chapter on eminent domain was extensively rewritten by the 1971 Legislature. L. 1971, c. 595. The relevant statute on appeals is now Minn. St. 117.145, which provides: "At any time within 40 days from the date that the report has been filed, any party to the proceedings may appeal to the district court from any award of damages embraced in the report, or from any omission to award damages, by filing with the clerk a notice of such appeal *and mailing a copy of such notice to all parties of record having an interest in lands described in the appeal. Within ten days of the date of mailing any other party may appeal.* The notice shall specify the particular award or failure to award appealed from, the nature and amount of the claim, the land to which it relates, and grounds of the appeal, and if applicable, the notice required in section 117.086." (Italics supplied.)

for the taking of the entire property. We reject this construction of the award.

Much of Tem-Trol's argument is rebutted by State, by Lord, v. Radosevich, *supra*. In that case, the court considered the validity of a single appeal from an award to the owner of five parcels of land. The state contended the appeal was ineffective as duplicitous under the doctrine of State, by Ervin, v. May, *supra*, which held the state could not maintain a single appeal from separate awards in a condemnation proceeding against two parcels of land held by different fee owners. Explaining the underlying rationale in May, the Radosevich court quoted from May as follows (249 Minn. 276, 82 N. W. 2d 75):

" '* * * Each award becomes a severable subject of controversy. Therefore appeals become vulnerable to the charge of duplicity as in other judicial proceedings. *There was* absolutely *no community of interest between the two landowners here,* and there could no more be one appeal from the two awards than there could be one appeal from two entirely separate judgments in wholly different cases.' " (Italics supplied in Radosevich.)

The situation in Radosevich was "easily distinguishable" since "[i]t cannot be said * * * there is no community of interest on the part of the single landowner, albeit his rights involved several tracts of land which may have been designated as separate parcels by the commissioner." 249 Minn. 276, 82 N. W. 2d 75.[2]

Since Minnesota has consistently followed the "unit rule" in determining the value of real property subject to separate es-

---

[2] The further argument in State, by Lord, v. Radosevich, 249 Minn. 268, 82 N. W. 2d 70 (1957), that the appeal was defective because it did not state the award for each separate parcel, was dismissed as based upon the same premise that the statute requires a separate appeal from the award as to each parcel. In the instant case, both of Tem-Trol's arguments similarly merge so that it can succeed on either ground only if separate appeals are required from the award in gross and from the apportionment of the award.

tates,[3] the "community of interest" between the fee owner and a leaseholder is obvious. In Hockman v. Lindgren, 212 Minn. 321, 324, 3 N. W. 2d 492, 493 (1942), this community of interest was made evident by our explanation of the effect of the rule:

"* * * Properly interpreted, [the unit] rule means that regardless of whether the award is more or less than the total actual damage, it must be apportioned to each interested party in the ratio that his actual damage bears to the total actual damage. To illustrate, if the actual damage to the leasehold were $2,000 and to the fee $1,000, then, regardless of the amount of the award, whether more or less than $3,000, it should be apportioned two-thirds to the lessee and one-third to the fee owner."

In the instant case, the commissioners made an award in gross which the fee owners felt was inadequate and then apportioned the award in a manner the fee owners felt was contrary to their lease with Tem-Trol. Despite Tem-Trol's arguments, the apportionment made by the commissioners does not convert the award into two separate awards. We hold there was sufficient community of interest between the fee owners and Tem-Trol to allow a single appeal. Where the notice of appeal specifically challenged the apportionment made, and where the notice was properly served on Tem-Trol, we find no basis for holding the appeals from the award ineffective.

---

[3] See, e.g., Smith v. City of St. Paul, 65 Minn. 295, 68 N. W. 32 (1896); Hockman v. Lindgren, 212 Minn. 321, 3 N. W. 2d 492 (1942); State, by Lord, v. Frisby, 260 Minn. 70, 108 N. W. 2d 769 (1961). The general rule is stated in 6B Dunnell, Dig. (3 ed.) § 3099, as follows: "Where several persons have separate estates or interests in a single tract or parcel of land taken in condemnation proceedings, the proper mode of reaching a fair valuation of the property, and of ascertaining the damages of those interested, is to treat the property as though the entire estate and all interests therein were in a single person, and to find the value and damage in gross, leaving the apportionment of the award to be thereafter made according to the previous interests of the parties in the property."

2. Tem-Trol's arguments on the merits of the district court's judgment are more clearly without merit. It cannot be disputed that the lease terminated 30 days after August 19, 1971, the date of the taking. Therefore, the trial court held Tem-Trol's rights to the condemnation award were limited to the value of the leasehold for a 30-day period. Two clauses in the lease compel this holding.

The first clause provided that either party could cancel the lease within 30 days of any public taking of 25 percent or more of the property. Here, the entire leased property was taken, but neither party expressly exercised its option to cancel. A similar clause was construed in the case of In re Improvement of Third Street, St. Paul, 178 Minn. 552, 228 N. W. 162 (1929). There, as here, the lease provided either party could cancel the lease upon a taking of any part of the demised property for a public use. When the entire property was condemned, the court held the lease was terminated despite the failure of either party to exercise its option to terminate (178 Minn. 554, 228 N. W. 163) :

"In the instant case the parties evidently apprehended that the leased premises would be interfered with or taken by the city before the end of the lease they were making. They were not willing to let their rights rest upon the settled law applicable when property under lease is taken under the right of eminent domain. So the quoted clause was inserted. Its fair meaning appears to us to be that the term should end if and when the city took the entire leased premises; but if only part were taken then either party had the option to end the term. If the whole demised premises were taken nothing remained upon which either party could predicate an election or option. Hence, the whole premises being appropriated and the parties having stipulated that that event ended the term, the lessee could claim no compensation for its leasehold except up to the time it thus ended, and the lessor became entitled to full compensation for the whole estate undiminished by any claim from the former lessee. As we construe the quoted clause of the lease, its meaning was that in the event

of the city's appropriating the whole of the demised premises the lessee's share in the damages was gone."

See, also, Naegele Outdoor Advertising Co. v. Village of Minnetonka, 281 Minn. 492, 162 N. W. 2d 206 (1968).

The lease also contained a clause providing that "regardless of the amount of taking, the Lessee specifically waives any and all claims and demands on account of any such taking, save and except abatement of rent, as against the Lessors, but not as against the condemner. Lessee's rights as against the condemner shall be limited to damages, if any, to its leasehold estate by reason of such taking and to damages, if any, to leasehold improvements and trade fixtures belonging to and installed by Lessee at its expense. All other items of damages are, as between Lessors and Lessee, hereby assigned by Lessee to Lessors." Although there has been no previous consideration of such a clause in Minnesota, the case of State Highway Comm. v. Oregon Investment Co. 227 Ore. 106, 361 P. 2d 71, 96 A. L. R. 2d 1137 (1961), is directly in point. In that case, the Oregon Supreme Court held a similar clause, "[a]lthough * * * not a model of clarity, * * * disclos[ed] a clear intent that the tenant should not share in the award made on account of the condemnation of the leased premises * * * either for the termination of his leasehold estate or for improvements, if any, made by him to the premises." 227 Ore. 109, 361 P. 2d 73, 96 A. L. R. 2d 1139.

Under either of the clauses discussed above, it is clear that Tem-Trol contracted away its rights to recover more than the value of a 30-day leasehold estate.

3. Finally, Tem-Trol challenges the district court's determination that Tem-Trol is additionally entitled to only that portion of the gross award representing the reasonable value of the *use* of the leasehold improvements installed by it, rather than the value of the improvements themselves. This issue is readily disposed of by the unchallenged statement in the affidavit of one of the fee owners, made in support of summary judgment, that "[t]he fee owners and Tenant concede that upon

such termination [i.e., expiration of the lease] fee owners would be entitled to all leasehold improvements." Since Tem-Trol would not receive the improvements or their value upon expiration of the lease, it cannot receive their value upon condemnation under the self-destruction clause of the lease.

Since the Holts have not cross-appealed, we need not consider whether Tem-Trol is entitled to even the limited recovery for a 30-day leasehold advantage and for the value of the use of the leasehold improvements, recovery of which were denied by the Oregon court.

Affirmed.