**CITY OF ROCHESTER,**
Petitioner, Respondent,

v.

**NORTHWESTERN BELL TELEPHONE COMPANY, et al., Lower Court**
Respondents,

**Arlie M. Williams, et al., Respondents,**

**First Bank Davenport, Thomas Sherlock, et al., Appellants.**

No. C2-88-888.

Court of Appeals of Minnesota.

Nov. 22, 1988.

Review Denied Jan. 13, 1988.

Frederick S. Suhler, Jr., Rochester, for City of Rochester.

Donald C. Steiner, Donald C. Steiner, P.A., Rochester, for Williams et al.

William J. Ryan, Michaels Seeger Rosenblad & Arnold, Rochester, for First Bank Davenport.

Jerome W. Perry, Jerome Perry Law Offices, Rochester, for Sherlock et al.

Heard, considered and decided by SCHUMACHER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

FOLEY, Judge.

Appellants First Bank Davenport and Thomas H. and Naomi Sherlock appeal

from a summary judgment determining distribution of condemnation award proceeds. The trial court granted summary judgment to respondents Arlie M. Williams and Maybert Brannan, affirming the Commissioners' condemnation award of the entire $325,000 condemnation proceeds for the total taking of property under the power of eminent domain to Williams and Brannan. We affirm.

## FACTS

Williams and Brannan, the surviving fee owners of Parcel 107 located in downtown Rochester, Minnesota, leased the property to James M. O'Connor for a term of 50 years ending December 31, 1995, with rent of $300 per month for the first 30 years and $350 per month for the remaining 20 years (O'Connor lease). The leased premises consisted of part of a platted city block including a two-story brick building.

Under the terms of the lease, O'Connor had the right to raze the existing building and construct a new building. In 1949–50, O'Connor did so and constructed the building currently in use. The O'Connor lease provides:

9. ALTERATIONS. * * * All permanent additions made to the premises shall belong to the LANDLORDS [Williams/Brannan] and become part of the premises subject to this lease.

The lessee's interest in the O'Connor lease was subsequently assigned to Arnolds, Inc. Thereafter, Arnolds signed a lease agreement for Parcel 107 with the Sherlocks (Sherlock lease). The Sherlock lease runs concurrently with the O'Connor lease, both ending December 31, 1995. The Sherlock lease reserves rents to Arnolds of $2,200 per month plus 4.5% of gross receipts and makes other reservations of right.

The Sherlocks operated a retail store on the premises and spent $102,000 in labor and materials for permanent improvements to the property, including an elaborate entry made of steel and mohagany, carpeting,

repairs and new lighting. The O'Connor lease permits a tenant, at its own expense, to make any additions, alterations and improvements, but provides all permanent additions belong to landlords. The Sherlock lease permits alterations or improvements with the written approval of lessor, and permanent additions remain part of the realty, including carpeting, paneling, cabinets and similar improvements.

Sometime after the Sherlock lease was executed, Arnolds transferred its interests to First Bank in exchange for a release of certain debts totalling $230,499.75. Thereafter, First Bank collected the rents from the Sherlocks pursuant to the Sherlock lease and paid the rents to Williams/Brannan pursuant to the O'Connor lease. First Bank computes the net of tax cash flow rental amount as $1,593.74 per month.

On March 16, 1987, respondent City of Rochester condemned the building for a downtown development project. The parties stipulated the total value of the property was $325,000. The Commissioners' final report awarded the entire condemnation proceeds to Williams and Brannan. In support of the award, the Commissioners relied upon the termination clause in the O'Connor lease:

14. CONDEMNATION. In the event of the entire demised premises shall be appropriated or taken under the power of eminent domain by any public or quasipublic authority, this lease shall terminate and expire as of the date of such taking and the tenant shall thereupon be released from any further liability hereunder.

The Commissioners found the lease language was

clear that the lease terminated upon the premises being taken by eminent domain proceedings and that the intent of the parties was that lessor was to receive all of the proceeds in accordance with current Minnesota law.

In support of their award, the commissioners cited *In re Improvement of Third Street, St. Paul, Buckbee–Mears Co. v.*

*City of St. Paul,* 178 Minn. 552, 228 N.W. 162 (1929) (court construing a lease containing the language "then this lease and the term demised shall, at the option of either party, terminate," held lessor entitled to the whole estate undiminished by any claim from former lessee).

Upon the request of First Bank and the Sherlocks, the Commissioners applied the rule in *Hockman v. Lindgren,* 212 Minn. 321, 322, 3 N.W.2d 492, 493 (1942) (a condemnation award made in gross should be apportioned in the ratio that the actual damage to each bear to the total actual damage) to determine each party's apportionment if the lessees were entitled to share in the award:

| | | |
|---|---|---|
| $146,250 | to Williams/Brannan, fee owners |
| 97,500 | to the Sherlocks |
| 81,250 | to First Bank Davenport |
| $325,000 | Total Award |

First Bank and the Sherlocks appealed to the district court, claiming the respective lessees were entitled to their share of the condemnation award because the O'Connor lease did not contain a specific benefit disclaimer clause wherein lessee disclaimed any interest in the condemnation award. Williams and Brannan moved for summary judgment, asking the court to affirm the Commissioners' award. The district court granted Williams and Brannan's motion for summary judgment. This appeal followed.

## ISSUE

Did the trial court err when it granted summary judgment awarding the entire condemnation proceeds to Williams and Brannan based upon the automatic termination clause in the lease?

## ANALYSIS

On appeal from summary judgment it is the function of the appellate court to determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

The facts are not in dispute. The parties stipulated to the material facts and there are no other necessary issues of material fact to be determined. Summary judgment is therefore appropriate here.

The trial court reasoned, based on existing Minnesota law, that "the inclusion [in a lease] of a termination clause, by itself, is sufficient to bar the lessee from participation in the condemnation award." First Bank and the Sherlocks argue that because the law abhors forfeitures unless stated in most explicit terms, a termination clause alone is not sufficiently explicit to cause a forfeiture of a lessee's normal right to share in a condemnation award. They urge this court to abandon longstanding Minnesota precedent and adopt an "emerging doctrine" requiring a lease also contain a benefit disclaimer clause stating specifically that it is the intent of the parties the lessee will not share in the condemnation award before a forfeiture is imposed. *See e.g., Urban Renewal Agency v. Wieder's, Inc.,* 53 Or.App. 751, 632 P.2d 1334 (1981), *rev. denied,* 292 Or. 334, 644 P.2d 1127 (1981); *Maxey v. Redevelopment Authority of Racine,* 94 Wis.2d 375, 288 N.W.2d 794 (1980).

While we recognize the preference for explicit language when abrogation of a lessee's rights is involved, we decline to adopt the emerging doctrine in this case. We hold the trial court did not err when it granted summary judgment awarding the entire condemnation award proceeds to Williams and Brannan pursuant to the automatic termination clause in the lease.

The fifth amendment of the United States Constitution, as well as article I, section 13 of the Minnesota Constitution, provides that private property shall not be taken for public use without "just compensation." U.S. Const. amend. V; Minn. Const. art. I, § 13. "Just compensation" means cash fair market value of the property taken. *Almota Farmers Elevator & Warehouse Co. v. United States,* 409 U.S. 470, 472, 93 S.Ct. 791, 792, 35 L.Ed.2d 1 (1973). A tenant whose leasehold interest

is taken may be entitled to compensation for injury to, or destruction of, improvements or fixtures on the leased premises. *United States v. 40.558 Acres of Land,* 62 F.Supp. 98 (D.Del.1945). A leasehold is normally valued for condemnation purposes as "the fair rental value of the premises less the amount of the rent for the remainder of the term." *In re Assessment for Widening Third Street in St. Paul, McGill–Warner Co.,* 176 Minn. 389, 390, 223 N.W. 458, 458 (1929).

A lease may however validly provide the tenant shall have no right to share in the compensation for the taking of property. *United States v. 70.39 Acres of Land,* 164 F.Supp. 451 (D.Cal.1958). Where a lease contains a valid clause for its automatic termination on the taking of property for public use by government authority, the lessee thereby contracts away any rights it might otherwise have to compensation, and the lessee is entitled to nothing. *United States v. Petty Motor Co.,* 327 U.S. 372, 376, 66 S.Ct. 596, 599, 90 L.Ed. 729 (1946). This is because "[c]ondemnation proceedings are in rem * * * and compensation is made for the value of the rights which are taken." *Id.* 327 U.S. at 376, 66 S.Ct. at 599 (citations omitted).

In 1929, the Minnesota Supreme Court construed the effect of an automatic termination clause on a lessee's right to condemnation proceeds. *See Buckbee–Mears,* 178 Minn. 552, 228 N.W. 162. The lease contained this provision:

> If the premises or any part thereof, or any part of the improvements of which they form a part, shall be taken for any street or any other public use, or shall during the continuance of this lease, be destroyed by the action of the public authorities, then this lease and the term demised shall, at the option of either party, terminate.

*Id.* at 553, 228 N.W. at 163. The supreme court reasoned a fair meaning of the lease provision was "the term should end if and when the city took the entire leased premises, but, if only part was taken then either

party had the option to end the term." *Id.* The supreme court concluded because the whole premises was appropriated, "the lessee could claim no compensation for its leasehold except up to the time it thus ended," and the "lessor became entitled to full compensation for the whole estate undiminished by any claim from the former lessee." *Id.*

■ In this case, the O'Connor lease termination clause is controlling, not the Sherlock lease. A sublessee is bound by whatever language affecting his title is found in the principal lease. *Stees v. Kranz,* 32 Minn. 313, 20 N.W. 241 (1884). The termination clause in the O'Connor lease provides that "this lease shall terminate and expire as of the date of such taking." This language, drafted in 1945, seems tailored to the 1929 Minnesota Supreme Court's interpretation of the termination clause in *Buckbee–Mears.* Under then existing Minnesota law, the parties to the O'Connor lease could have reasonably intended such a termination clause to mean the "lessor became entitled to full compensation for the whole estate undiminished by any claim from the former lessee." *Id.* 178 Minn. at 554, 228 N.W. at 163.

In cases subsequent to *Buckbee–Mears,* the Minnesota Supreme Court has consistently upheld the validity of automatic termination clauses in condemnation proceedings. *See In re Site for Library, Korengold v. City of Minneapolis,* 254 Minn. 358, 95 N.W.2d 112 (1959) (automatic termination clause in lease bars lessee from participating in condemnation award; this is the general rule not only in Minnesota but in a majority of other state jurisdictions); *Naegle Outdoor Advertising Co. of Minnesota v. Village of Minnetonka,* 281 Minn. 492, 162 N.W.2d 206 (1968) (automatic termination clause or termination at option of lessor upon condemnation bars lessee from participating in condemnation award, but where billboard owner, as lessee, had sole power to terminate lease where location value diminished or where billboards were prohibited by law, lease

would not preclude lessee receiving compensation if taking occurred).

This court has also applied the automatic termination clause rule. In *Matter of Minneapolis Community Development Agency*, 417 N.W.2d 127 (Minn.Ct.App.1987), *pet. for rev. denied* (Feb. 24, 1988), we held that to claim compensation from a condemning authority, lessee must establish a compensable interest in the premises on the date of the Commissioners' award. *Id.* at 129 (citing *State v. Pahl*, 257 Minn. 177, 100 N.W.2d 724 (1960)). Thus, when a lease by its terms automatically terminates upon condemnation of the land, the lessee is entitled to no compensation for the loss of the leasehold interest, since the lessee agreed in advance to such a termination. *Minneapolis Community Development Agency*, 417 N.W.2d at 129 (citing *Naegele*, 281 Minn. at 502, 162 N.W.2d at 214; *Korengold*, 254 Minn. at 361, 95 N.W.2d at 114).

The leasehold improvements provision of the O'Connor lease lends further support to the parties' intent that the lessee should not share in the condemnation award. The O'Connor lease provides all improvements made belong to the landlords. In a 1973 case, the Minnesota Supreme Court interpreted a similar clause, holding:

> [I]n view of provision in lease that leasehold improvements installed by lessee were to be the property of the lessors on expiration of the lease, lessee could not recover for the value of the improvements when property was taken for a public use.

*County of Hennepin v. Holt*, 296 Minn. 164, 207 N.W.2d 723 (1973). The court reasoned:

> Since [lessee] would not receive the improvements or their value upon expiration of the lease, it cannot receive their

value upon condemnation under the self-destruction clause of the lease.

*Id.* 296 Minn. at 173, 207 N.W.2d at 728. Similar reasoning applies in this case.

■ First Bank and the Sherlocks argue *Petty Motor* requires *both* an automatic termination clause and a benefit disclaimer clause before a forfeiture is imposed. *Petty Motor*, 327 U.S. at 372, 66 S.Ct. at 597. They point out the *Petty Motor* lease contained both. (All rights of lessee shall immediately cease and terminate; lessee shall not be entitled to any part of any award that may be made for such taking. *Id.* at 375, n. 4, 66 S.Ct. at 598, n. 4. While we recognize this difference in language from the O'Connor lease, we note that the court in *Petty Motor* only specifically mentioned the automatic termination clause as causing the forfeiture. *Id.* at 375, 66 S.Ct. at 598. We also recognize that while a small minority of states are currently changing their interpretation of *Petty Motor* to require both termination and benefit disclaimer clauses before forfeiture is imposed,[1] the Minnesota Supreme Court, in cases decided subsequent to *Petty Motor*, has upheld forfeitures based upon termination clauses alone.[2] Thus we decline to adopt the emerging doctrine urged by First Bank and the Sherlocks.

■ First Bank and the Sherlocks argue that equity requires the lessees receive a share of the condemnation award. In this case, we cannot agree. Lessors entered into a long-term lease with fixed rental payments providing that improvements belonged to them. One can reasonably infer the parties intended any gain from the value of the improvements act as an incentive for the long-term, fixed-rate lease. To now deprive lessors of that contracted-for gain by applying a doctrine basically retroactively to such an old lease seems patently

1. *See, e.g., Urban Renewal Agency v. Wieders, Inc.*, 53 Or.App. 751, 632 P.2d 1334 (1981), *rev. denied*, 292 Or. 334, 644 P.2d 1127 (1981); *Maxey v. Redevelopment Authority of Racine*, 94 Wis.2d 375, 288 N.W.2d 794 (1980).

2. *See, e.g., Naegele Outdoor Advertising Co. v. Village of Minnetonka*, 281 Minn. 492, 162 N.W. 2d 206 (1968); *State v. Pahl*, 257 Minn. 177, 100 N.W.2d 724 (1960); *In re Site for Library, Korengold v. City of Minneapolis*, 254 Minn. 358, 95 N.W.2d 112 (1959).

unfair and contrary to the parties' intent in view of the O'Connor lease language, the interpretation of such language by the Minnesota Supreme Court at the time the lease was executed, current Minnesota law, and the relatively recent trend in a small minority of states holding to the contrary.

## DECISION

The trial court did not err when it granted summary judgment awarding the entire condemnation proceeds to Williams and Brannan.

AFFIRMED.