METROPOLITAN AIRPORTS COMMISSION, Respondent,

v.

Thomas W. NOBLE, Respondent,

Speedway SuperAmerica LLC, a Delaware corporation, Appellant,

Northern States Power Company, n/k/a Xcel Energy, Respondent,

State of Minnesota, Respondent,

County of Hennepin, Respondent,

City of Bloomington, Respondent.

No. A06–2400.

Supreme Court of Minnesota.

April 9, 2009.

Gary A. Van Cleve, Michael J. Mergens, Larkin Hoffman Daly & Lindgren, Ltd., Minneapolis, MN, for appellant.

James R. Dorsey, Stuart T. Alger, Leonard, Street and Deinard, P.A., Minneapolis, MN, for respondent Thomas W. Noble.

## OPINION

MEYER, Justice.

Thomas Noble owned and leased real property to Speedway SuperAmerica LLC (SuperAmerica) for 12 years, until the property was condemned. The lease between Noble and SuperAmerica contained a condemnation clause that terminated the lease upon condemnation. A "damages" clause gave Noble all rights to a condemnation award, with separate language that Noble "shall not be entitled to any award made to [lessee] for the fair value of, and

cost of removal of stock and fixtures, provided a separate award is permitted by the taking authority directly to [lessee]." The district court found that this separate language entitled SuperAmerica to the "Immovable Fixtures" portion of the condemnation award; but the court of appeals reversed and awarded the fixtures portion to Noble, concluding that the condemnation clause ended SuperAmerica's rights in the property and condemnation award. We affirm the court of appeals decision to grant the fixtures award to Noble, but on alternate grounds.

On May 1, 1992, SuperAmerica entered into a lease with 24th Ave. Motel Corporation to rent property in Bloomington, Minnesota. SuperAmerica rented the property to operate a convenience store, gas station, and car wash. Noble, the property owner, was assigned the 24th Ave. Motel Corporation's interest in the lease. The lease agreement had a ten-year term, with two five-year extensions, and contained the following relevant provisions:

18. *Eminent Domain.*

(a) *Entire Premises.* If substantially all of the leased premises shall be taken by any public authority under the power of eminent domain then the term of this Lease shall cease as of the day possession shall be taken by such public authority and the rent shall be paid up to that day with a proportionate refund by [lessor] or such rent as may have been paid in advance.

. . . .

(c) *Damages.* In any event all damages awarded for such taking under the power of eminent domain whether for the whole or a part of the leased premises shall belong to and be the property of [lessor] whether such damages shall be awarded as compensation for diminution in value to the leasehold or to the fee of the premises; provided, however, that [lessor] shall not be entitled to any award made to [lessee] for the fair value of, and cost of removal of stock and fixtures, provided a separate award is permitted by the taking authority directly to [lessee].

In September 2004, the Metropolitan Airports Commission (MAC) petitioned to condemn the leased property for a runway expansion project. The district court granted the petition and assigned commissioners to determine the final condemnation award. The district court transferred title and possession to MAC once it deposited an initial appraisal amount with the court on December 14, 2004.

The initial appraisal by MAC on the property totaled $2.38 million. The real estate was valued at $2 million and the immovable fixtures at $380,000. The real estate estimate included the value of the land, convenience store building, and site paving. The immovable fixtures portion of the appraisal estimated the value of items such as the outside canopy, multi-function dispensers, underground fuel tanks, pumps, signage, and other fixtures "related to the convenience store operation"; the appraisal did not include the value of movable items or personal property. Taking depreciation into account, the final valuation for the immovable fixtures was $360,000.

The court-appointed commissioners later determined the final condemnation award to be $2.76 million. The commissioners designated $2.4 million for "Land and Improvements" to Noble, but said that the $360,000 award for "Immovable Fixtures" belonged to either Noble or SuperAmerica, and referred the matter back to the district court to conduct a hearing to determine the legal right to those damages. Pursuant to a stipulation between Noble and SuperAmerica, the district court heard

the cross-motions for disbursement as cross-motions for summary judgment.

The district court dismissed Noble's summary judgment motion and ordered the court administrator to disburse the immovable fixtures award to SuperAmerica. The court found the lease provision on the division of a condemnation award, section 18(c), was "clear and unambiguous," and entitled SuperAmerica to the fixtures award as a condition precedent to Noble's receipt of the real estate award.

A divided court of appeals panel reversed the district court in an unpublished opinion. *Metro. Airports Comm'n v. Noble,* No. A06–2400, 2008 WL 434721, at *5 (Minn.App. Feb.19, 2008). The majority held that the condemnation clause terminated SuperAmerica's interest in the property, and therefore entitled Noble to the full condemnation award. *Id.* at *3–4. The court alternatively concluded that the district court erred by finding the "Immovable Fixtures" portion of the condemnation award was a "separate award" as required by the lease language. *Id.* at *4. We granted SuperAmerica's petition for further review on the issue of which party is entitled to the "Immovable Fixtures" award.

■ On an appeal from summary judgment, we determine whether there are any genuine issues of material fact and whether a party is entitled to judgment as a matter of law. *Wensmann Realty, Inc. v. City of Eagan,* 734 N.W.2d 623, 630 (Minn.2007). Where the material facts are not in dispute, as in this case, we review the lower court's application of the law de novo. *Id.* Additionally, the interpretation of a lease is an issue reviewed by this court de novo. *Hous. & Redev. Auth. of St. Paul v. Lambrecht,* 663 N.W.2d 541, 546 (Minn.2003).

I.

The issue of apportionment presents two questions: (1) does the presence of a condemnation clause in a lease automatically terminate all of the lessee's property rights, and (2) if so, does that automatic termination preclude a lessee from contracting for a division of a condemnation award in the lease? The lease between Noble and SuperAmerica contains two relevant sections: first, section 18(a), commonly referred to as a condemnation clause, states that if the leased premises are taken by eminent domain, "then the term of this Lease shall cease as of the day possession shall be taken by such public authority." Second, section 18(c) states that in the event of a condemnation, all proceeds belong to the lessor, except that the lessor "shall not be entitled to any award made to [lessee] for the fair value of, and cost of removal of stock and fixtures, provided a separate award is permitted by the taking authority directly to [lessee]."

■ The first question is whether a condemnation clause in a lease automatically terminates all of the lessee's property rights, including its right to just compensation. Just compensation under the United States and Minnesota constitutions is available to parties that prove: (1) they had an interest in the property at the time of the taking; (2) the government took that interest pursuant to the condemnation; and (3) the interest is compensable. *Lambrecht,* 663 N.W.2d at 545–46. The established rule is that both the lessor and the lessee have a constitutionally protected property interest when leased property is taken by condemnation. *A.W. Duckett & Co. v. United States,* 266 U.S. 149, 151, 45 S.Ct. 38, 69 L.Ed. 216 (1924); *In re Improvement of Third Street,* 178 Minn. 552, 553, 228 N.W. 162, 163 (1929). Just compensation for the lessee's interest is gener-

ally the "fair rental value of the premises less the amount of the rent for the remainder of the term." *Naegele Outdoor Adver. Co. v. Village of Minnetonka*, 281 Minn. 492, 503, 162 N.W.2d 206, 214 (1968) (quoting *In re Assessment for Widening Third Street*, 176 Minn. 389, 390, 223 N.W. 458, 458 (1929)).

The lessee's constitutional right to just compensation may be contractually altered in a lease agreement by a condemnation clause, such as the one in section 18(a). When a lease contains a condemnation clause, the automatic termination language is read to deprive the lessee of any rights or entitlements beyond the taking since the lessee has "contracted away any rights that it might otherwise have had." *U.S. v. Petty Motor Co.*, 327 U.S. 372, 376, 66 S.Ct. 596, 90 L.Ed. 729 (1946). The established rule in Minnesota is that when a lease provision states that the lease ceases upon condemnation, it terminates a lessee's interest in the property. *Lambrecht*, 663 N.W.2d at 546; *County of Hennepin v. Holt*, 296 Minn. 164, 171–73, 207 N.W.2d 723, 727–28 (1973); *Korengold v. City of Minneapolis*, 254 Minn. 358, 362–63, 95 N.W.2d 112, 115–16 (1959); *In re Improvement of Third Street*, 178 Minn. at 554, 228 N.W. at 163.

SuperAmerica argues that language from *Lambrecht*, our most recent decision on this issue, allows parties to contractually alter rights in the property despite the presence of a condemnation clause. In *Lambrecht*, the lessee, Shannon Kelly's, claimed it was entitled to the loss of going-concern damages from the condemning authority in a condemnation. 663 N.W.2d at 543. The lease contained a condemnation clause that read: "this lease shall terminate as of the date of such appropriation and all condemnation proceeds shall be the sole property of Lessor." *Id.* at 546. We held that the condemnation clause meant that Shannon Kelly's had "contracted away all its rights in the property, including any claim for loss of going concern." *Id.* at 547. We noted that "[h]ad Shannon Kelly's intended to retain some rights in the property after condemnation, it could have retained those rights through the lease agreement." *Id.*

SuperAmerica mischaracterizes this language in *Lambrecht*. The *Lambrecht* language does not allow parties to reallocate the right to just compensation when a condemnation clause is present—the language instead requires that a condemnation clause must be removed or altered for a lessee to keep any property rights. In this case, the contract contained a condemnation clause that simply terminated the lease; thus, SuperAmerica's right to just compensation for its portion of the property—the "fair rental value of the premises less the amount of the rent for the remainder of the term"—no longer exists. *In re Widening Third Street*, 176 Minn. at 390, 223 N.W. at 458. The equitable principles tied to just compensation rights do not exist in a dispute between two private parties over an award allocation; the condemnation clause ended SuperAmerica's rights in the property and to just compensation.

The precedent that establishes this rule and to which Noble cites, however, is distinguishable from the lease in this case. In those cases, the leases contained termination clauses and either expressly denied to the lessee the entirety of the condemnation award, or were silent regarding how the compensation award should be divided. *See Lambrecht*, 663 N.W.2d at 546; *Korengold*, 254 Minn. at 359–60, 95 N.W.2d at 114; *In re Improvement of Third Street*, 178 Minn. at 553, 228 N.W. at 163. In this case, this lease states that Noble gets the entire condemnation award, except that Noble "shall not be entitled to any award

made to [lessee] for the fair value of, and cost of removal of stock and fixtures, provided a separate award is permitted by the taking authority directly to [lessee]."

This brings us to the second question: if a lessee no longer has a property interest in the condemned property and no right to just compensation, does that preclude a lessee from contracting for a division of a condemnation award in the lease? This same question was answered by the Supreme Court of Nevada in *Musser v. Bank of America*, 114 Nev. 945, 964 P.2d 51 (1998). The lease in *Musser* contained a condemnation clause as follows: "If the whole of the premises should be taken under the power of eminent domain, the lease term shall cease as of the date of taking." *Id.* at 53. This is substantially the same lease termination clause as in the instant case. The *Musser* court recognized that this clause would generally be sufficient to bar a lessee's claim to part of an award. *Id.* However, and importantly, the lease contained a separate clause providing for apportionment of a condemnation award:

> Damages awarded either for a taking of the whole of the premises or part of the premises, ... shall be paid as follows:
>
> . . . .
>
> Lessee and Lessor shall apportion between them any part of the award then remaining attributable to the improvements. Lessees receiving the portion of such award that the unexpired term of the lease bears to the entire term of the lease and Lessor receiving the balance.

*Id.* The separate clause providing for apportionment of the award was given effect, and by its terms, the lessee was permitted to share in the award of damages. *Id.* at 54. The court's holding was based on a basic rule of contract interpretation that courts must interpret a contract so as to give effect to all of its provisions. *Id.*

Like the *Musser* court, we affirm the general rule that a condemnation clause automatically terminates a lessee's interest in the property and bars a lessee's claim to part of the condemnation award. Further, we are bound by a rule of contract interpretation that requires us to give effect to all of a contract's terms. *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995). In order to give effect to all of the terms in a lease, if the lease contains a clause for apportioning the condemnation award, then the apportioning agreement governs. If the lease contains no language on apportioning the award, the entirety goes to the lessor.

## II.

Having established these general principles, we turn to the lease in this case to determine whether section 18(c) contains language apportioning part of the award to the lessee. Again, section 18(c) states that the lessor is entitled to all damages awarded for a taking; "provided, however, that [lessor] shall not be entitled to any award made to [lessee] for the fair value of, and cost of removal of stock and fixtures, provided a separate award is permitted by the taking authority directly to [lessee]."

We have stated that a lease is a form of a contract. *Minneapolis Pub. Hous. Auth. v. Lor*, 591 N.W.2d 700, 704 (Minn.1999). Unambiguous contract language must be given its plain and ordinary meaning. *Id.* "A contract is ambiguous if its language is reasonably susceptible to more than one interpretation." *Current Tech. Concepts*, 530 N.W.2d at 543. In construing ambiguous language, we will consider the contract as a whole in light of the circumstances surrounding its formation, and try to derive the parties' real intentions. *State ex rel. Humphrey v.*

*Philip Morris USA, Inc.,* 713 N.W.2d 350, 355 (Minn.2006).

 The lease in this case provides that SuperAmerica shall be entitled to a "separate award" if "permitted by the taking authority directly to [lessee]." That the award must be "permitted by the taking authority directly to [lessee]" is somewhat confusing; in a condemnation, the court-appointed commissioners, the lessee and lessor, or the court determine the allocation of a condemnation award. *See Seabloom v. Krier,* 219 Minn. 362, 365–66, 18 N.W.2d 88, 90 (1945). In any event, the commissioners, in fact, made a single award of damages for the value of land and improvements to Noble. They allocated another portion of the award for the value of immovable fixtures and effectively left it to the courts to determine who was entitled to the allocation under the terms of the lease and applicable Minnesota law. The commissioners clearly did not make a "separate award" "directly" to SuperAmerica. We conclude that section 18(c) does not apportion part of the award to SuperAmerica and therefore affirm the court of appeals decision to grant the fixtures award to Noble.

Affirmed.

MAGNUSON, C.J., and DIETZEN, J., took no part in the consideration or decision of this case.